Gannett *v.* Cunningham.

GANNETT & *al. versus* CUNNINGHAM.

It is not allowable that one, in the discharge of an official duty, should make a gain out of property entrusted by the law to his custody for the benefit of others.

An officer, who, under the R. S. chap. 114, has sold upon mesne process, the goods which he may have attached thereon, and taken a note to himself therefor, approved by the attaching creditor, has no right to retain, for his own use, the interest money accruing upon such note.

An assignment, by the debtor to the creditor, of the goods so attached, or the proceeds of the same, includes the interest as well as the principal, collected by the officer upon such note.

When the assignment was accompanied by an order, directing the officer to deliver the goods or pay the avails of them to the assignee, it may, from a payment of the *principal* according to the order, be *inferred* that the officer accepted the order, though he at the same time refused to pay over the interest money, and claimed to retain it for his own benefit.

Upon such implied acceptance, an action of assumpsit may be maintained by the creditor against the officer for the interest money.

Gannett v. Cunningham.

After the dissolution of a co-partnership, it is regarded as continuing for the settlement of its affairs, and each partner, for that purpose, retains his former powers, unless a different agreement be made.

A conveyance of property to one member of a co-partnership firm, made *after the dissolution* in payment of a debt due to the firm, will enure to the benefit of the firm.

For an invasion of such property, an action may be maintained in the name of all the members of the firm.

On Report from *Nisi Prius,* Wells, J.

Assumpsit for $136,74, money had and received, being the amount of interest money collected by the defendant, a deputy sheriff, upon notes claimed by the plaintiffs.

. *Shepley* and *Dana,* for the plaintiffs.

*Barnes,* for the defendant.

1. The action is not maintainable in the name of all the plaintiffs. The assignment on which the whole claim rests, was made to Balch only. He alone gave the order upon which the net avails of the sale were paid by the officer to the attorneys; and their receipt therefor was given in the name of Balch alone.

2. No action is sustainable by B. W. Balch, in his own name. He had only an assignment of the debtor's interest in "goods" or proceeds. There was no proof of express promise by Cunningham to pay him.

The assignment did not *profess* to convey any authority to demand *interest.*

3. In suit by any parties, *assumpsit for money had and received,* would not lie. Refusal to pay, if not justifiable, was a breach of official duty. Assumpsit, (implied,) is not the proper remedy. 14 Maine, 112.

4. Upon the ground, that plaintiffs in the original suit are entitled to the *interest,* because *they* directed and insured the credit, they would be equally entitled to it, if they had failed in their action, which is absurd.

5. Upon the question of fact, "what was Cunningham's relation to the proceeds of the sale," the evidence does not

show that he was released from his official responsibility and risk.

It must be *clearly* shown that Cunningham was *adequately* released, otherwise his right and privilege were equal to his liability and risk.

The mere verbal, individual consent and approval by Palmer, the plaintiff's attorney, were not adequate.

Cunningham's acts at the time, and his return, are proof, that he was not released from his risk.

This is shown by the words in his return of proceedings at the *sale*, " which sum I hold to be disposed of according to law."

It was Cunningham, not Palmer, who gave the extension of credit on the notes.

The notes taken were payable to Cunningham, not negotiable, and were within Cunningham's control.

Finally, it was not possible for plaintiffs, or any one in their interest, to release Cunningham from his liability to Williams & Waterhouse, the original defendants.

After the sale, the plaintiffs might have failed in their suit. The notes might have proved worthless. If it be credible, that Palmer gave Cunningham an adequate guaranty as against the plaintiffs, and other attaching creditors, it is absurd to hold, that any thing testified to by Palmer was accepted by Cunningham, as a sufficient resource, out of which, in case of failure of the notes, to make out the $3202,52, necessary to reimburse Williams & Waterhouse.

SHEPLEY, C. J.— The case is submitted for decision with authority to draw such inferences as a jury might properly do. It appears, that the defendant, as a deputy of the sheriff of Waldo county, on May 4, 1850, attached certain goods on a writ in favor of the plaintiffs against Waterhouse & Williams. He subsequently made an attachment of the same goods on a writ in favor of the plaintiffs against Waterhouse alone, and also on a writ in favor of Hobart & Briggs against Waterhouse. Service was never completed upon the last and it was never entered. A suit was commenced by Williams against

the sheriff of Waldo county for the alleged misconduct of the defendant in making those attachments.

Upon application of the plaintiffs the goods attached were appraised and sold at auction under the direction of the defendant, on August 13, 1850, by virtue of the provisions of the statute, ch. 114, § 53 to 56 inclusive. The goods appear to have been sold on a credit of sixty and ninety days, for good and satisfactory notes, by the verbal consent and approval of Palmer, one of the plaintiffs' attorneys, present at the sale. Two notes were accordingly given by the purchaser with satisfactory sureties, payable to the defendant, each for one half of the purchase money, one payable in sixty and the other in ninety days with interest.

On May 3, 1851, those suits were settled between the parties to them, and Waterhouse & Williams assigned, transferred, and released, to Benjamin W. Balch, one of the plaintiffs, and a member of the firm of Gannett, Balch & Co., all their title and interest in the goods and the proceeds of them, discharged the suit of Williams against the sheriff, and by a written order directed the defendant to deliver the goods attached to said Balch, the firm of Gannett, Balch & Co. having failed about three months after the sale. Balch directed the defendant to deliver the goods or pay the proceeds to the attorneys of the plaintiffs in these suits. The defendant having given an extension of the credit, collected the notes, several months after they became payable, and paid over to said attorneys, (who receipted therefor as attorneys to Balch alone,) the sum of $3202,52, being the net proceeds of the sales, except the interest which had accrued and been collected by him upon the notes. This he declined to do on the ground, that it belonged to him and not to the plaintiffs. To recover the amount of that interest money, this action is brought.

If the defendant, by any arrangement with the debtors or others, had disposed of the goods without the consent of the creditors, he would have become responsible to them for the same, and they might not have had any claim upon him for any benefit received by him by his own misconduct. The

loss or gain might have been his own. While making sale of the goods upon credit and taking notes from the purchaser, he acted in his official capacity. He was justified in carrying that arrangement into effect. *Twombly* v. *Hunnewell*, 2 Greenl. 221. For taking such notes by consent of the attorney of the plaintiffs he could not have been made responsible, if the makers of them, being in good credit at the time, had failed before their maturity. *Jenney* v. *Delesdernier*, 20 Maine, 183.

A sheriff cannot by his official acts acquire an absolute title to goods attached by him, or to their proceeds when sold according to the provisions of the law. *Harrington* v. *Fuller*, 18 Maine, 277.

If goods attached should be taken from an officer by a trespasser, and he should recover therefor a sum equal to the value of the goods at the time of their attachment, with damages equal to the interest on that sum for several months, while the action on which they were attached was pending, could he retain such damages to his own use ? In case the action should fail, and he should be called upon to restore the goods to the debtor ; or in case of recovery by the plaintiff, could he refuse to apply them in satisfaction of his judgment ? They would have been recovered on account of injury to the debtor's property, in which the officer had only a special property. By the trespass of another, that special property could not be so changed as to make him the absolute owner. He could become so only by the debtor's refusing to receive the proceeds and recovering a judgment against him for the value of the goods. Acting as an officer of the law and as such, being an agent and trustee for all concerned, he could have no other claim to such damages than to be remunerated from them for all expenses incurred respecting the goods.

In the case of the *Franklin Bank* v. *Small*, 24 Maine, 52, the opinion states ; " if the officer immediately upon attaching property converts it to his own use ; or if he should then realize the full value of it by a sale ; or recover of receiptors, or of one who had tortiously taken it from him ;

a good reason would exist, why he should be accountable to the creditor for such value."

This would make him accountable for what he received on account of the property attached, although it might be an amount much greater than the value of the property at the time of attachment.

The defendant cannot be permitted to retain the amount received as interest, on the ground that it has become his property. It would be highly objectionable to allow an officer to make a gain out of property entrusted by the law to his custody, not for his own benefit, but for the benefit of others.

It is insisted if the plaintiffs are entitled to the amount received for interest, that it cannot be recovered in an action of assumpsit.

Admitting that the defendant held the money in his official capacity, and that an action of tort was the appropriate remedy, and that such an action could have been maintained against the sheriff for the default of his deputy, the case cited and other cases would authorize an action of assumpsit to be maintained against the defendant upon an express promise.

When a written acceptance is not required by statute, an acceptance of a bill of exchange or order may be inferred from the conduct of the drawee. Bayley on Bills, 175, note 45, Ed. by P. & S.; *Hough* v. *Loring*, 24 Pick. 254. In the latter case it is said, an acceptance may be inferred from any act, which gives credit to the bill. In this case the order drawn upon the defendant requested him to deliver all the goods to Balch. He insists, that he has complied with that request in full, and has thereby exhibited the fullest evidence of a disposition to accept and to pay upon the order all which he ought to pay upon it. The acceptance of an order amounts to a special promise to pay it. The objection to the form of the action cannot prevail.

Another objection is, that the action cannot be maintained in the name of all the plaintiffs, because it appears, that the firm of Gannett, Balch & Co. had been dissolved before a

settlement of their action was made, and the goods attached were not transferred to the members of that firm, but to Balch alone.

After the dissolution of a partnership, it is regarded as continuing for the final settlement of its affairs; and each partner for that purpose retains the full possession of his former powers, unless they make a different agreement. Story on Part. sect. 324, 328. The settlement appears to have been made by the attorneys of Gannett, Balch & Co. and of Waterhouse & Williams. The consideration for the transfer of the goods appears to have been the settlement and payment of claims asserted by the former against the latter. The transfer of the goods was made to one of the members of the firm, for the purpose of paying a debt claimed to be due to the firm; and the order was made upon the defendant to deliver the goods to him, being a member of that late firm. A conveyance of property to one member of a firm, in payment of debt due to the firm, will enure to the benefit of a firm. One member of a firm could not, if so disposed, deprive the firm of property taken in payment of a debt due to the firm by having it conveyed to himself. It would, if thus conveyed, remain partnership property. There is in this case no reason to conclude, that Balch, by having the transfer made to himself, had any intention to deprive the firm of its interest in the property.

That form of conveyance would seem to have been adopted for the convenience of collecting the debt. A fraudulent intent to deprive his partners of their rights cannot be presumed, especially, when he is found uniting with them in a suit to recover a part of that property alleged to have been conveyed to him in exclusion of their rights.

The other objections to recovery cannot prevail.

*Defendant defaulted.*