Argued at Pendleton May 6, reversed July 1, rehearing denied July 22, 1924.

# R. M. CARREY *v.* J. F. HAUN AND R. H. HAUN.

## (227 Pac. 315.)

**Partnership—Partner not Entitled to Accounting as of Date of Exclusion from Control of Property, Where He Took No Steps to Dissolve, and Liable for Subsequent Loss.**

1. A partner was not entitled to an accounting as of date he was excluded from control of property where he then took no steps to dissolve partnership and obtain an accounting and is liable for his share of loss subsequently occurring.

**Partnership—Suit for Accounting Sufficient Notice of Intention to Dissolve.**

2. Suit by one partner for an accounting is sufficient notice of intention to dissolve firm.

**Partnership—Note Given by One Partner to Another Held not Proper Counterclaim in Action for Accounting.**

3. In action for accounting, note executed by plaintiff to one of defendants could not, strictly speaking, be set up as a counterclaim.

**Partnership—One Member may Bring About Dissolution at any Time for His Own Pleasure.**

4. A partner has the right at any time, at his own pleasure and without any cause, to dissolve the partnership, in absence of restriction in partnership contract.

**Partnership—Partnership Remains in Force for Winding Up, Regardless of When Dissolved.**

5. Regardless of when partnership was dissolved, it remained in force for purpose of winding up its affairs, and partners were liable pro tanto for loss occurring pending litigation for accounting.

---

4. Effect on right of partner to dissolve partnership of clause in agreement providing for termination by mutual consent only, see note in 19 Ann. Cas. 383.

See 22 C. J. 1017; 30 Cyc. 650, 659, 740, 742.

Partnership—Members Keeping Accounts Owed Duty to Make Clear
   Statement of Transactions in Action for Accounting.

6.  Partners keeping principal accounts of firm owed the duty,
in action for accounting, to make a clear statement of their trans-
actions affecting the firm.

Evidence—Statement of Firm's Affairs by Expert Accountant from
   Books and Papers was Competent.

7.  Statement of affairs of firm, compiled by an expert accountant
from books and papers, was competent.

From Wallowa: WALTER H. EVANS, Judge.

In Banc.

REVERSED.   REHEARING DENIED.

For appellants there was a brief and oral argu-
ment by *Mr. D. W. Sheahan.*

For respondent there was a brief and oral argu-
ments by *Mr. J. A. Burleigh* and *Mr. Sylvester H.
Burleigh.*

BURNETT, J.—This is a suit for an accounting
and winding up of the affairs of a partnership. The
parties entered into a contract of partnership to
engage in the sheep business in November, 1920.
They are agreed that the venture was to continue
for an indefinite time; that the plaintiff was to have
an undivided half interest in the business, receive
one half the profits and bear one half the losses and
that the two defendants, who are father and son,
were together to have a like interest and liability in
the concern. They all agree likewise that the de-
fendants were to put into the partnership band 300
sheep belonging to them and were to pay a propor-
tional part to the firm for the care, feed and other
expenses of their individual sheep.

The plaintiff avers that he was to receive the usual
and customary wages which he states were $100 per

month for his personal attention to the care of the flock. This is denied by the defendants. The parties agree that at the beginning of the partnership the firm purchased 923 head of sheep for $3,692, for which amount the defendant J. F. Haun gave his personal note and at the same time took the plaintiff's note for half of that amount or $1,846. It is likewise stated that subsequently, during the months of October and November, 1921, the firm bought additional sheep amounting in price to $989 for which Haun paid. The plaintiff charges that about April 6, 1922, the defendant J. F. Haun excluded him from the management of the sheep and refused to allow him any part in the control or care thereof. This allegation is denied by the answer. Both parties demand an accounting of the partnership concerns and a winding up and dissolution thereof. The plaintiff contends that the accounts should be stated as of April 6, 1922, the date when he claims he was excluded from the rights and prerogatives of a partner, and at the amount and valuation of the firm property at that time without regard to subsequent losses. The defendants claim that the accounts should be stated up to the rendition of the decree. The date of settlement of accounts therefore becomes the most important question in the case.

1. In view of the fact that the partnership as stated by both parties was to continue for an indefinite time, the matter of excluding the plaintiff from control of the partnership property is not important. Even if the alleged exclusion were a fact the firm was not *ipso facto* dissolved nor its affairs wound up. If the articles of partnership had bound the parties to continue the firm for a definite period, such exclusion

probably would furnish the plaintiff grounds for rescinding the contract and compelling settlement of the business of the concern, but he might have waived the affront and in any event it would remain to wind up the business, during which and for that purpose the firm would continue to exist and be liable for losses.

As stated in 20 R. C. L. 954:

"A contract of partnership containing no stipulations as to the time during which it shall continue in force does not endure for the life of the partners, or of either of them, or for any longer time than their mutual consent. Such a partnership may be dissolved by the agreement of the members, or by the act of any partner alone proceeding in accordance with his own will and pleasure, and at a moment's notice. All that is required is that notice of the dissolution must be communicated forthwith to the other members of the firm. By such notice the partnership is dissolved."

Likewise in *Eagle* v. *Bucher,* 6 Ohio St. 295 (67 Am. Dec. 342, 344), it is said:

"The principle relied on by defendant's counsel that a partnership may be dissolved by the act of one of the partners, we do not, in the view we take of this case, intend to impugn. That is too well settled to be now questioned. But to effect that purpose, the act must be done with a view to its accomplishment. It should be communicated at once to the other members of the firm. They must be advised of the new relations created by the withdrawal of a member, or a transfer of his interest in the concern. Their future relations toward each other, and their pursuit of the particular enterprise, depend on the acquisition of such knowledge."

Respecting his alleged exclusion from the partnership, the plaintiff himself testifies as follows: Being asked to

"State what occurred as near as you can,—just how things went on there during that time?

"A. Well, there seemed to be,—he got mad, and he wouldn't speak.

"Q. Who are you talking about now? * *

"A. Mr. J. F. Haun. He would come in with his head down, and if you asked any questions he wouldn't give a civil answer, and anything I did, he didn't seem to be satisfied, and it went on, getting ready to start them out [referring to the sheep].

"Q. Start them out where?

"A. Out to the range.

"Q. Now then tell us where you had obtained range, if you had at all, for the sheep.

"A. Why over at Powatka, I had went over and saw about the range.

"Q. When had you gone over there?

"A. Sometime about the 20th or 25th of March, I believe,—about the 25th of March. I don't remember the exact date; the last part of March. * *

"Q. Well, when you were ready to start, what if anything did Mr. J. F. Haun say to you about the matter?

"A. Well, when I came back from this trip over there, he seemed to be out of sorts, and I asked him about the sheep and he gave me some sort of an answer I didn't understand, and went on, and two or three days later, I says, 'Well, what kind of arrangements are you going to make to start these sheep?' He says, 'These sheep don't start to move until there is two hundred and eighty dollars interest paid me in cash and a mortgage on these sheep.'

"Q. What if anything did he say to you at that time relative to whether you could take the sheep away, or whether he wanted you with the sheep?

"A. He didn't say. I could not get any talk out of him,—no business proposition out of him.

"Q. When you could not get any understanding out of him or any communication out of him, what did you have to do? Who did you have a talk with?

"A. Roy.

"Q. Just explain now how you did that.

"A. Well, I would go and ask Roy what he thought about it, and then he would go and ask the old man.

"Q. And bring back to you the answer from Mr. Haun?

"A. Yes, that is the only satisfaction I could get any way at all.

"Q. Now in that way what if anything was communicated to you in that way about whether you could take these sheep or stay with the sheep?

"A. I asked Roy there one day,—

"Q. What did he say to you?

"A. I was talking to Roy when the old man came out and I says,—that when the old man told me,—I says, 'There is nothing for me to do now,'—no, it was before this I says to Roy,—I forget just how I worded that now.

"Q. Well, the substance as near as you can remember it,—if you can't remember the exact words, the substance of what was said.

"A. I says to him,—that is, when I was talking about it,—I seen I could not get along with them,—I seen the way they was going,—I says, 'I'll sell out to you,' and I says, 'I will give you my services,' and he went and talked to the old man, and he said the old man said he didn't want me with the sheep,— didn't want my services."

The testimony for the defendants expressly and explicitly deny the statement imputed to the elder Haun that the sheep should not move until he had received a payment of $280 interest and a mortgage on the sheep. The evidence discloses that the plaintiff abandoned the enterprise and took no further part in the management of the flock after April 6th. On the other hand, the testimony for the defendants is to the effect that Haun was urging the plaintiff to get together the camp equipage including a tent and a stove for the care and warmth of weak lambs and

prepare for moving the sheep to the pasture which the plaintiff himself had selected. This testimony is not denied by the plaintiff.

2. Without dispute in the record, during the autumn of 1921 while the plaintiff was in charge of the sheep on the range a severe snowstorm came up in the mountains and caused great losses from the flock. It also is unquestioned that while the sheep were being moved to the range selected by the plaintiff in April, 1922, a snowstorm arose which caused great loss of the sheep. They had been quartered on the ranch of the defendant J. F. Haun during the winter and necessarily were kept on dry feed and the loss of lambs was considerable because when thus fed the ewes did not yield enough milk. It was important, therefore, according to the testimony, that the flock be taken to green pasture and it was with this purpose in view that they were being moved when the April storm came up and caused the death of so many of the flock. As to whether the losses thus occurring after the plaintiff abandoned the enterprise and until the decree should be rendered winding up the concern shall be borne by the firm or not is the main question in the present case. So far as notice to the other partners to be given by the plaintiff of his intention to dissolve the firm is concerned, the suit itself is a sufficient notice. It is analogous to an action on a demand note in which it often has been held that the commencement of the action itself is a sufficient demand. See, also, *Continental Divide Min. Co.* v. *Bliley,* 23 Colo. 160 (46 Pac. 634).

3, 4. In the answer, the defendants gave a history of the note given by Carrey to Haun, reciting that it had not been paid and in effect set it up as a counterclaim against the plaintiff. Strictly speaking, such

procedure is not proper. It is an affair between maker and payee of the note and does not, in this suit, constitute a proper counterclaim. Properly, the defendant, J. F. Haun, the payee and holder of the note, should be left to his action at law against the plaintiff to recover what is due upon the note; but we find in the plaintiff's brief this statement:

"The cases we have cited clearly show, we believe, that money loaned by one partner to another to enable the latter to meet his obligations to the firm creates a personal claim by the lender against the borrower, and is not properly included in the partnership accounting. This error, however, we are willing to waive, because we realize that J. F. Haun was entitled to recover this money from the plaintiff and it might as well be given to him in the accounting as in a separate action."

In view of this waiver, we shall treat the account as though the defendants had furnished all the working capital of the firm. Having in mind the well-grounded right of any partner where there is no restriction in the original contract against dissolution, to bring about a destruction of the firm at any time at his own pleasure and without any cause therefor, we proceed to consider the effect of such a dissolution upon the firm business.

5. Even if we consider the dissolution of the partnership to have occurred on April 6, 1922, yet it remains in force for the purpose of winding up its affairs to accomplish which it was necessary to continue the care of the flock and otherwise to conduct the business with a view to liquidation. Having gone away and failed to render further service in the management of the firm property, the plaintiff cannot complain if that duty was assumed and performed

by the other partners. The dissolution, whenever occurring, did not change the interest of either partner in the property of the firm until the final closing up of its affairs. Hence the loss of sheep prior to or during litigation was *pro tanto* the loss of the plaintiff in the absence of any fraud upon the part of the defendants. Nothing of that kind is averred. If he was dissatisfied with the defendants' management after notice of dissolution the plaintiff had a right to apply to the court for a receiver to wind up the business of the firm.

In *Riggen* v. *Investment Co.,* 31 Or. 35, 38 (47 Pac. 923), this court speaking by Mr. Chief Justice MOORE said:

"The rule seems to be well settled that the dissolution of a partnership by the mutual consent of all its members does not destroy the firm's identity, which, in contemplation of law, continues to exist until its debts are paid and its affairs wound up"; citing *Brown's Exr.* v. *Higginbotham,* 27 Am. Dec. 618; *Gannett* v. *Cunningham,* 34 Me. 56.

In *McKinnis* v. *Dodge,* 103 Or. 9, 13 (203 Pac. 876), it is said by Mr. Justice McCOURT:

"During the existence of the partnership each member is the agent of his copartners and has implied authority from them to transact any business within the scope and object of the partnership, and after dissolution this mutual agency continues to a limited extent until the affairs of the partnership are administered and wound up."

The rule is thus stated in *Houser* v. *Irvine,* 3 Watts & Serg. (Pa.) 345 (38 Am. Dec. 768):

"It may be affirmed that a partnership, though dissolved for future operations, remains in force for closing the concern; and that the liquidating partner retains his former power to bind the firm in things

within the scope of the business committed to him. The proper limitation to the exercise of it is, that it be restrained to acts necessary to be done for the beneficial transaction of it. * * Now by the dissolution of a partnership, the power which each had to bind the others is at an end, except for the purpose already indicated—to finish what remains to be done in order to close its concerns."

There are no firm creditors involved in this litigation. Under the principle enunciated by the precedents already noted, there is no more reason for charging the defendants with the losses accruing in April, 1922, than for charging the plaintiff with those of November, 1921. The sheep required the same care in one instance as in the other. They, or the proceeds of their sale, were as much the property of the firm in April, 1922, and afterwards until settlement, as in November, 1921. The loss in either case was the loss of the firm. The only difference is that in one instance they were in immediate charge of one partner and in the other, in the custody of the other members of the firm. In the spring of 1922 they were being taken to green pastures selected by the plaintiff himself. No one was responsible for the coming of the storm. The loss ensuing was the loss of the firm and must be borne by it. No act of the defendants is shown subsequent to April 6, 1922, in relation to the sheep except what is perfectly consistent with their care and sustenance. If of any consequence, the exclusion of the plaintiff from the care of the sheep and the management of the firm concerns, as a partner, is not proven. He seems to have become dissatisfied and anxious to sell out to the defendants but, as stated by the defendant, J. F. Haun, testifying in behalf of the defendants, the witness was unwilling to buy any more debts and refused to accept the proposition of

the plaintiff to sell his interest in the firm at a price as disclosed by the testimony, of $150. The plain deduction from the testimony is that the plaintiff became dissatisfied and abandoned the enterprise. The defendants could do no less than take care of the flock thus left on their hands and they are entitled to consider the firm as in operation with all its liabilities to loss as before until the concern is finally wound up. In *Durbin* v. *Barber,* 14 Ohio, 311, cited by plaintiff, the court fixed a date for dissolution of the partnership and directed the settlement of the accounts of the firm; but as to subsequent transactions, allowed profits in proportion to the capital of the complaining party, actually employed in the venture. The same principle relating to the losses of a firm would likewise apply so that the plaintiff should be liable for losses legitimately incurred in winding up the partnership business. We conclude, therefore, that the position of the plaintiff that the account should be closed as of April 6, 1922, when he abandoned the enterprise is not tenable and we hold that for the purpose merely of winding up its affairs but not engaging in new business, the firm continued with like privileges and liabilities to the partners as before, subject to liquidation by the partners in whose custody the firm property was left by the act of the plaintiff in withdrawing from its management.

6, 7. The principal accounts of the firm were kept by the defendants and it becomes their duty to make a clear statement of their transactions affecting the firm. They introduced in evidence their books and papers showing the firm transactions conducted by them. They gave oral testimony as to the items. In addition, they offered in evidence a statement of the affairs of the firm compiled by an expert accountant

from these self-same books and papers.  The plaintiff does not question the accuracy of this statement nor of the charges made by the defendants.  He does, however, challenge the admissibility of the statement made by the expert on the ground that it is not competent evidence.  In *State* v. *Reinhart,* 26 Or. 466 (38 Pac. 822), the defendant was indicted for embezzlement of the funds of his employer and the books he kept were introduced in evidence.  The defendant contended that even if they were competent for that purpose, they did not show that he embezzled the money of his employer.  The court held, however, that they were competent, and stated:

"But in our opinion no other conclusion seems possible in the light of the evidence of the expert whose testimony and summary taken from the books were competent evidence to show the condition of the account."

In treating of the best evidence, the following is the rule laid down in 1 Greenl. Ev., § 93:

"A further relaxation of the rule has been admitted, where the evidence is the result of voluminous facts, or of the inspection of many books and papers, the examination of which could not conveniently take place in court."

The precept is thus stated in section 166, Wharton's Criminal Evidence, 9th edition:

"And where a mass of private documents to be inquired into is so great that they cannot possibly be mastered in court, then, whenever a result can be ascertained by calculation, the result of such calculation, subject to be tested by other expert witnesses, is admissible."

*Masonic Mutual Benefit Society* v. *Lackland et al.,* 97 Mo. 137 (10 S. W. 895, 10 Am. St. Rep. 298), was

an action on the bond of a secretary of the association wherein the court, speaking by Mr. Justice SHERWOOD, said:

"Objection was made to the accountant Spinney testifying as to his examination of the books and papers in the office of plaintiff. The books, packages of vouchers, etc., were present at the examination and were used from time to time by counsel on both sides. There is no rule in the law of evidence better settled than that, where the evidence is the result of voluminous facts, or of the inspection of many books and papers, the examination of which cannot conveniently take place in court, or where a witness has inspected the accounts of the parties, though not allowed to give evidence of their particular contents, he will be allowed to speak of the general balance or result of such examination, and such statement is not hearsay."

To the same effect is *State* v. *Findley,* 101 Mo. 217 (14 S. W. 185); *Hollingsworth* v. *State,* 111 Ind. 289 (12 N. E. 490); *Boston Railroad Corp.* v. *Dana,* 1 Gray (Mass.), 104.

We are relieved of the task of ascertaining the value of the firm property, for in pursuance of a stipulation of the parties, the partnership property was sold under order of the court by the sheriff of Wallowa County and the net proceeds were paid into the registry of the court, amounting to $3,377.46. This amount must be substituted for inventory prices as they appear in evidence for the result of a judicial, sale is a final test of value. It becomes necessary, therefore, to state the account between the firm and each partner and thus arrive at the relation between the plaintiff on the one hand and the two defendants who defend together, on the other. The plaintiff's claim for wages cannot be sustained, for without dis-

pute in the testimony nothing was said about them when the enterprise was commenced. They were not included in the agreement and it was only after the business had been in operation for some months that the plaintiff asked Roy Haun to speak to his father about the matter, but nothing further was ever said or done about it.

| | |
|---|---:|
| Confessedly, the plaintiff received from the concern | $744.90 |
| He paid on account of his expenses | 631.50 |
| Balance due from him to the firm | 113.40 |

The defendants are entitled to credit as follows:

| | | |
|---|---:|---:|
| The whole capital advanced | | $4,685.00 |
| Expense of the firm to August 10, 1922 | | 9,333.19 |
| Further expense to the final sale by sheriff | | 768.02 |
| Total | | 14,736.21 |

The defendants should be charged the following items:

| | | |
|---|---:|---:|
| Lambs sold in 1921 | $1,339.29 | |
| A second lot of lambs sold in 1921 | 1,691.57 | |
| Wool sold in 1921 | 1,094.78 | |
| Wool sold in 1922 | 1,471.50 | |
| Shearing private sheep | 86.90 | |
| Feed for private sheep, 1921 | 636.00 | |
| Feed for private sheep, 1922 | 658.00 | |
| Blankets | 31.00 | 7,009.04 |
| Firm owes defendants | | 7,777.17 |
| Deducting proceeds of sheriff's sale | | 3,377.46 |
| Balance | | 4,399.71 |

The plaintiff owes defendants one half of this sum, $2,199.85. He also owes the defendants one half of his debt to the firm as above stated, or $56.70, making

a total debt from the plaintiff to the defendants of $2,256.55, for which sum a decree is entered for the defendants against the plaintiff, but without costs or disbursements in either court. The defendants are entitled to the amount $3,377.46 on deposit with the clerk of the Circuit Court and the decree must provide that it be paid to them, and further that the note of the plaintiff to the defendant J. F. Haun, by virtue of the waiver of error hereinbefore quoted having been merged in the decree against the plaintiff, to all intents and purposes is canceled and held for naught. Accordingly, the decree of the Circuit Court is reversed.                REVERSED.    REHEARING DENIED.