[No. 10167–6–I. Division One. January 11, 1984.]

RICHARD E. LOGAN, ET AL, *Appellants,* v. DONALD W. LOGAN, ET AL, *Respondents.*

*Neubauer & Mussehl* and *Michael D. Hunsinger,* for appellants.

*Trethewey, Brink, Todd & Clayton, Daniel Brink,* and *David Kerruish,* for respondents.

CALLOW, J.—The marital community of Richard and Barbara Logan appeals the judgment entered after a nonjury trial which dismissed, under CR 41(b)(3), their complaint for judicial dissolution of a partnership and which specifically enforced the buy–sell provisions of a partnership agreement. They allege that sufficient evidence was presented to permit judicial dissolution under RCW 25.04-.320 and that the filing of their complaint did not trigger the buy–sell provision of the partnership agreement.

On July 29, 1975, the plaintiffs, Richard E. Logan and Barbara Logan, and the defendant, Donald W. Logan,

entered into a partnership agreement forming the partnership, Logan and Logan Investments. Richard and Donald Logan are brothers. The purpose of the partnership was the acquisition and holding of four apartment buildings in Seattle for the benefit of the partnership. The initial capital contribution was $70,000, of which plaintiffs contributed two–thirds plus 10 percent of their two–thirds contribution and defendant contributed the remaining one–third less the additional 10 percent made by plaintiffs. This amounted to an original capital contribution by Richard and Barbara Logan of $51,333.33, and $18,666.67 contributed by Donald Logan. The additional 10 percent contribution made by plaintiffs was in exchange for the defendant's time, effort, and expertise in searching out and securing the right to purchase the apartment buildings.

Since Richard Logan was often unavailable for months at a time because of his employment with the Federal Drug Enforcement Administration, plaintiffs' financial adviser, David Shymko, was appointed as their attorney–in–fact to act as their representative. Shymko signed the partnership agreement on behalf of the plaintiffs. The defendant was designated as the managing partner for which he received a fee of 6 percent of the gross revenues of the partnership.

The partnership was a successful business and resulted in substantial economic benefit to all the partners. At the time of trial, the net value of the partnership's assets had risen to $900,914. However, friction between Shymko and the defendant began to develop due to their differing opinions as to accounting procedures and the sufficiency of the financial information provided the plaintiffs, neither of which were explicitly set forth in the partnership agreement. Shymko continually requested additional detailed financial information which was not required by the partnership agreement. The trial court characterized Shymko's involvement as "picking and chewing" on the defendant, sending the defendant voluminous correspondence, "correspondence that he may very well have felt was harassing to his side when he is trying to run this thing, and he's got

these people interfering with him." Initially, the defendant cooperated with Shymko but eventually refused to continue to comply with any more of Shymko's demands.

As a result of this friction, plaintiffs requested that Madeline Donaldson review the financial affairs of the partnership. Based on her allegations of irregularities in the partnership's books, defendant's conflict with Shymko, and the partners' continued dissension, the plaintiffs brought action for judicial dissolution of the partnership and partition of its assets alleging misconduct on the part of the defendant or, in the alternative, that the partnership be retained but that the defendant be removed as the managing partner. They also obtained a temporary restraining order against the defendant, which order was later dissolved. Plaintiffs further attempted and were denied the appointment of a receiver to manage the properties during the pendency of the lawsuit.

An appraisal of the property was made and on April 24, 1980, defendant tendered an election to purchase to the plaintiffs pursuant to the buy–sell provisions of the partnership agreement. Plaintiffs' refusal to sell prompted defendant to seek, by way of counterclaim, specific performance of the buy–sell provision.

A nonjury trial was conducted in December 1980. Following presentation of the plaintiffs' evidence, the trial court found that the plaintiffs had failed to show any right to relief for judicial dissolution under RCW 25.04.320 and granted defendant's motion for a CR 41(b)(3) dismissal. The trial court then heard evidence from both parties regarding the defendant's counterclaim and granted defendant's request for specific performance of the buy–sell provision of the partnership agreement. This entitled defendant to buy out the plaintiffs' interest for $600,609 over a period of 10 years in 40 equal principal payments plus interest at 6 percent per annum. Plaintiffs appeal.

Two issues are presented by this appeal:

1. Whether the trial court improperly granted a motion under CR 41(b)(3) for dismissal on grounds that no right to

relief was shown to permit judicial dissolution of a partnership under RCW 25.04.320.

2. Whether the trial court improperly entered an order requiring specific performance of the buy–sell provisions of the partnership agreement.

The *first* issue presented is whether the trial court improperly granted a motion under CR 41(b)(3) for dismissal on grounds that no right to relief was shown to permit judicial dissolution of a partnership under RCW 25.04.320. Upon completion of the plaintiffs' case, the trial court granted the defendant's motion under CR 41(b)(3) for dismissal on grounds that plaintiffs had shown no right to a judicial dissolution of the partnership under RCW 25.04-.320. CR 41(b)(3) states, in part:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in rule 52(a).

"In a nonjury trial, the trial court may pass upon a motion to dismiss at the close of plaintiff's case and grant the motion as a matter of law or fact." *Roy v. Goerz,* 26 Wn. App. 807, 809, 614 P.2d 1308 (1980).

> When the trial court rules as a matter of law, it must treat the plaintiff's evidence as true and determine that the plaintiff has failed to establish a prima facie case. No findings of fact are necessary or required. Alternatively, when the trial court rules as a matter of fact, it may weigh the evidence in support of plaintiff's case and make "*a factual determination* that plaintiff has failed to establish a prima facie case by credible evidence, or that the credible evidence establishes facts which preclude plaintiff's recovery." *N. Fiorito Co. v. State,* 69

Wn.2d 616, 618, 419 P.2d 586 (1966); *Richards v. Kuppinger,* 46 Wn.2d 62, 278 P.2d 395 (1955). If the trial court rules as a matter of fact, the court is required to enter findings of fact and conclusions of law. CR 41(b)(3). *Roy,* at 810. The trial court's written findings of fact clearly indicate that the trial court weighed the evidence and ruled as a matter of fact resolving the case on its merits. Hence, our review is "limited to ascertaining whether the findings of fact are supported by substantial evidence, and, if so, whether the findings support the conclusions of law and judgment." *Enterprise Timber, Inc. v. Washington Title Ins. Co.,* 76 Wn.2d 479, 482, 457 P.2d 600 (1969).

The plaintiffs first challenge the trial court's findings of fact relevant to the trial court's conclusion of law that "[p]laintiffs have failed to prove that defendant has materially or substantially breached the Partnership Agreement in any manner." However, the plaintiffs' failure to specifically assign error to the trial court's findings of fact in either the assignments of error or text of their brief causes such findings to become the established facts of the case. *In re Bennett,* 24 Wn. App. 398, 400, 600 P.2d 1308 (1979); *Lakeside Pump & Equip., Inc. v. Austin Constr. Co.,* 89 Wn.2d 839, 842, 576 P.2d 392 (1978). These findings further cannot be disturbed on appeal since they are supported by substantial evidence. *Seattle–First Nat'l Bank v. Brommers,* 89 Wn.2d 190, 199, 570 P.2d 1035 (1977); *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959). The trial court's findings of fact fully support the above stated conclusion of law.

Plaintiffs next challenge the trial court's conclusion of law that:

> Plaintiffs have failed to prove that defendant has been conducting himself in a manner which would make it not reasonably practicable to carry on the business of the partnership with defendant, and therefore, plaintiffs are not entitled to judicial dissolution under RCW 25.04-.320(d).

RCW 25.04.320(1)(d) states:

(1) On application by or for a partner the court shall decree a dissolution whenever: . . .

(d) A partner wilfully or persistently commits a breach of the partnership agreement, or otherwise so conducts himself in matters relating to the partnership business that it is not reasonably practicable to carry on the business in partnership with him . . .

■ Moreover, in jurisdictions which have adopted the Uniform Partnership Act, judicial dissolution will be allowed only where the alleged breach or misconduct was injurious to the partnership. *Fuller v. Brough,* 159 Colo. 147, 153, 411 P.2d 18 (1966) stated:

> Although the general rule is that gross misconduct, want of good faith, wilful neglect of partnership obligations, and such other causes as are productive of serious and permanent injury to the partnership, or which render it impracticable to carry on the partnership business, are proper grounds for the dissolution of a partnership by a court of equity at the instance of the innocent partner, nevertheless a court of equity will not dissolve an existing partnership for trifling causes or temporary grievances involving no permanent mischief.

*See Wood v. Holiday Mobile Home Resorts, Inc.,* 128 Ariz. 274, 625 P.2d 337 (Ct. App. 1981). *Roberts v. Mariner,* 195 Or. 311, 319–20, 245 P.2d 927 (1952) also stated:

> A court of equity will not decree dissolution of a partnership because of temporary or trifling disputes among the partners, or for animosity between partners which does not injuriously affect the partnership business, or because of technical opposition of a partner to the spirit of the articles of copartnership, where nothing dishonest or extravagant is shown and the conduct of the business is profitable.

Here, the trial court entered the following unchallenged findings of fact:

2.2 . . . The partnership, Logan & Logan Investments, has been a successful business, and has resulted in substantial economic benefit to all partners in the venture.

. . .

2.6 . . . At all times defendant Donald Logan carried out his responsibilities as manager of the Logan & Logan

Investments properties, in a manner which both preserved the partnership assets and enhanced their value.
. . .

2.14 . . . At all times, defendant Donald Logan cooperated with agents of plaintiffs, provided access to the partnership records and books, and made a reasonable attempt to comply with all plaintiffs' requests throughout the term of the partnership.
. . .

2.16 . . . Plaintiffs have failed to allege or prove any fraud or malfeasance on the part of defendant Donald Logan in regard to his management of the Logan and Logan Investments properties.

2.17 . . . The conduct of the partnership business by defendant has resulted in no damage to plaintiffs, . . . by the defendant.

These findings and the absence of findings to the contrary fully support the trial court's conclusion of law that the plaintiffs were not entitled to a judicial dissolution under RCW 25.04.320(1)(d). "In the absence of a finding of fact on a disputed matter, the appellate court will imply a finding against a party having the burden of proof on that issue." *Rhodes v. Gould,* 19 Wn. App. 437, 441, 576 P.2d 914 (1978); *see Brust v. McDonald's Corp.,* 34 Wn. App. 199, 209, 660 P.2d 320 (1983). Therefore, the trial court properly dismissed the plaintiffs' complaint pursuant to CR 41(b)(3) since the plaintiffs did not meet their requisite burden of proof entitling them to a judicial dissolution under RCW 25.04.320.

The *second* issue presented is whether the trial court improperly entered an order requiring specific performance of the buy–sell provisions of the partnership agreement.

The plaintiffs contend that under RCW 25.04.380 the trial court should have divided the partnership assets pro rata. However, RCW 25.04.400 states:

Rules for distribution. In settling accounts between the partners after dissolution, the following rules shall be observed, *subject to any agreement to the contrary . . .*

(Italics ours.) "Partners have the right to establish between themselves, by a partnership agreement or by a dissolution

agreement, their rights, duties and obligations so far as the partnership is concerned." *Estate of McKay v. Moses,* 35 Ill. App. 3d 458, 463, 343 N.E.2d 45, 49 (1976).

The partnership agreement stated, in part:

6. *Transferability and Dissolution:*

(a) No partner may sell, transfer, assign, hypothecate, encumber or otherwise dispose of his interest in the partnership unless he shall have first offered to sell such interest to the other partner.

. . .

(3) When the purchase price has been established and the remaining partner elects to purchase the interest of the selling partner at such price, the purchasing partner shall have the right and privilege of paying the purchase price in twenty (20) equal semi–annual installments, together with interest on the declining unpaid principal balance at the rate of six percent (6%) per annum, said interest to commence running from and after the date of the first payment as hereinafter provided, with the privilege of prepayment at any time and with the first payment to be due and payable on the first day of the month next following the month in which the option to purchase is finally exercised, and with subsequent payments due and payable each three months thereafter; provided, however, that until payment in full of the purchase price, the seller or his successors shall have a lien upon the partnership property as security for the unpaid balance of the purchase price, and any distribution of the partnership assets shall be applied to the extent necessary to payment of said purchase price . . .

. . .

(d) Dissolution Termination: The partnership shall be deemed terminated upon the occurrence of any of the following events:

(1) The sale or other complete disposition of all partnership property;

(2) The agreement of the partners provided, that if one of the partners dissent in such decision, the other partner shall offer to sell his interest in the partnership to the dissenter in the manner set forth in paragraph (a) above;

. . .

(4) . . . In the event of dissolution for the reason stated in subparagraph 1 or 2, the partnership shall ter-

minate or be wound up; the partnership shall be sold (any partner may be a purchaser of all or any portion thereof) its liabilities paid or provided for, and the remaining assets distributed to and among the partners pro rata in accordance with their respective capital account without undue delay.

The trial court found that the plaintiffs gave notice to the defendant of their desire to terminate the partnership by the filing of their complaint. The defendant answered the complaint and challenged the sought after judicial dissolution. Hence, the trial court declined to divide the partnership assets pro rata and concluded that defendant was entitled to specific performance of section 6(d)(2) of the partnership agreement allowing him to purchase plaintiffs' interest pursuant to section 6(a) of the agreement.

█ The buy–sell provision of the partnership agreement is not ambiguous as contended by the plaintiffs. The determination of whether a written instrument is ambiguous is a question of law subject to independent appellate review. *Rainier Nat'l Bank v. Clausing,* 34 Wn. App. 441, 447, 661 P.2d 1015 (1983). However,

> [a]n ambiguity will not be read into a contract where it can reasonably be avoided by reading the contract as a whole. *Green River Vly. Found., Inc. v. Foster,* 78 Wn.2d 245, 249, 473 P.2d 844 (1970). The term "ambiguous" has been defined as "'Capable of being understood in either of two or more possible senses".

(Citations omitted.) *McGary v. Westlake Investors,* 99 Wn.2d 280, 285, 661 P.2d 971 (1983).

Subparagraph (2) clearly indicates that section 6(a), the buy–out provision of the partnership agreement, is to apply whenever one partner dissents in the decision to terminate. The language following subparagraph (4) is applicable only when the partners unanimously agree to terminate the partnership. Plaintiffs' contention that the language following subparagraph (4) is also applicable whenever a partner dissents pursuant to subparagraph (2) would make a portion of subparagraph (2) meaningless. "An interpretation of a writing which gives effect to all of its provisions is favored

over one which renders some of the language meaningless or ineffective." *Wagner v. Wagner,* 95 Wn.2d 94, 101, 621 P.2d 1279 (1980).

The critical question is whether the filing of the plaintiffs' complaint constituted notice of their desire to terminate the partnership, thereby triggering the buy–sell provision of the partnership agreement. Under circumstances similar to the instant appeal, the court in *Clark v. Allen,* 215 Or. 403, 408–10, 333 P.2d 1100 (1959), stated:

> We conclude that a groundless attempt without cause by one partner to cause a partnership to be judicially dissolved is a "voluntary dissolution" or withdrawal from the partnership by that partner. We find strong support in the case of *Gertz v. Fontecchio,* 331 Mich 165, 49 NW2d 121. The partnership agreement in that case contained a provision similar to that in the contract before us. It provided: "Section 13: That if either of the partners shall be desirous of terminating the partnership at any time, the continuing partner shall have the privilege of taking the whole partnership business, at the rate at which the same shall be appraised and valued, on payment to the value to the retiring partner." In that case one of the partners, as here, attempted a groundless suit for dissolution. In construing this conduct the Michigan court, speaking through Justice Dethmers (at 49 NW2d 124), said:
>
>> "In the instant case, however, the trial court did not find, nor does an examination of the record disclose that plaintiff established misconduct by defendant in the handling of partnership affairs to such an extent as to make plaintiff justifiably dissatisfied or to practically force him to sell out, as in the Steckroth case. While § 13 of the agreement was undoubtedly intended to provide a means for termination of the partnership without recourse to judicial proceedings, plaintiff, in desiring termination of the partnership, should not be permitted, in the absence of substantial misconduct on defendant's part, to defeat the latter's rights under that section of the agreement by the simple expedient of bringing a suit. . . ."
>
> We concur in the opinion thus expressed. We are told that, even so, there must have been notice of dissolution on plaintiff's part to have caused a voluntary dissolution

by him. The filing of the complaint was notice of dissolution. *Carrey v. Haun,* 111 Or 586, 592, 227 P 315.

*Cf. Cooper v. Isaacs,* 448 F.2d 1202 (D.C. Cir. 1971), where *Clark v. Allen* was distinguished, the court observing that the filing of suit in *Clark* had been found to be "groundless" and, as here, a full evidentiary hearing had been had to ascertain that fact.

*Hunter v. Straube,* 273 Or. 720, 726–27, 543 P.2d 278 (1975) further stated:

> Plaintiffs contend that they expressed their will to dissolve the partnership by the filing of this suit, citing *Carrey v. Haun et al,* 111 Or 586, 592, 227 P 315 (1924). We agree with this contention. See *Clark v. Allen et al,* 215 Or 403, 410, 333 P2d 1100 (1959). However, we disagree with the contention of the plaintiffs that by the filing of this suit they are entitled to a dissolution in accordance with the Uniform Partnership Law. The plaintiffs ignore the provision of the partnership agreement that limits the dissolution to the withdrawing partners and expressly provides that "the retirement of any Partner shall not dissolve the partnership as to the other Partners".
>
> The power to dissolve a partnership is governed by ORS 68.530 and provides for dissolution both without violation of the partnership agreement and in contravention of the partnership agreement. In either case, it is clear that *if* the partnership agreement provides for the distribution of the partnership property the rights of the partners are governed by the partnership agreement rather than by the Uniform Partnership Law. See provisions in ORS 68.310, 68.420, 68.440, 68.590, 68.600 and 68.620.

*Hunter* relied, in part, on *Ashley v. Lance,* 75 Wn.2d 471, 451 P.2d 916 (1969), which held that the restrictive covenant applicable against "withdrawing" partners could be enforceable for the benefit of the remaining partner. The *Ashley* court noted that the withdrawing partners could not avoid a covenant not to compete merely by devising "the legalistic theory that they would dissolve their partnership . . . and not withdraw therefrom." 75 Wn.2d at 473.

Here, the plaintiffs' allegations concerning their entitle-

ment to a judicial dissolution of the partnership were groundless. The plaintiffs were unable to present sufficient evidence on their claim to overcome a CR 41(b)(3) motion for dismissal following the presentation of their case. Moreover, the partnership was very successful, netting the plaintiffs a substantial return on their initial investment contradicting any charges of mismanagement.

As in *Clark v. Allen, supra,* we conclude that the attempt by the plaintiffs to cause a judicial dissolution of the partnership constituted a decision on their part to terminate the partnership under section 6(d)(2) of the partnership agreement. The filing of the groundless lawsuit was an act inconsistent with the continuation of the partnership. *See* 60 Am. Jur. 2d *Partnership* § 175 (1972). The defendant, the sole dissenter to such decision, was thus entitled to specific performance of the buy–out provision, section 6(d)(2) of the partnership agreement. Plaintiffs could not circumvent what they viewed as the onerous buy–out provision of the partnership agreement by filing a suit, found to be groundless, for judicial dissolution. *See Hunter v. Straube, supra; Ashley v. Lance, supra.*

Plaintiffs finally contend that when the trial court refused to partition the assets of the partnership, equity required it to grant their request for alternative relief, to wit, maintain the existence of the partnership with the removal of the defendant as the managing partner. However, the relationship of partners is one of agency. It is so personal in nature that equity will not enforce the continuation of a partnership when one partner elects to terminate it, even though termination would be contrary to the partnership agreement. Uniform Partnership Act § 31, 6 U.L.A. 376, Official Comment, at 377 (Master ed. 1969). Nevertheless, the election to terminate the partnership does not create a vacuum in the relationship of the parties when the agreement sets forth the formula for dissolution and the manner in which the winding up of the partnership will be accomplished. There is no dispute that the agreement in issue was valid, enforceable, and freely entered into by the

parties. Nor is it contended that the agreement was unconscionable. The plaintiffs will receive over $600,000 in 40 equal payments over the next 10 years plus 6 percent interest per annum. This is a prodigious increase over their initial investment. Plaintiffs cite no legal authority in support of such alternative relief, to wit, a reformation of the partnership agreement. Hence, we need not consider this contention. *See State v. Fortun,* 94 Wn.2d 754, 756, 626 P.2d 504 (1980).

The judgment of the trial court is affirmed.

DURHAM, C.J., and CORBETT, J., concur.