Argued April 30, reversed and remanded July 8, petition for
rehearing denied September 9, 1964

# McCALLUM *v.* ASBURY ET AL

393 P. 2d 774

258

*Thomas H. Tongue,* Portland, argued the cause for appellants and cross-respondents. With him on the briefs was Robert Mix, Corvallis.

*James H. Clarke,* Portland, argued the cause for respondent and cross-appellant. With him on the briefs were George B. Campbell, Douglas H. Stearns, and Koerner, Young, McColloch & Dezendorf, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

GOODWIN, J.

This is a suit between individuals practicing medicine as partners. The plaintiff sued to dissolve the partnership and for other relief. The remaining partners answered with a counterclaim for an injunction to enforce against the plaintiff a restrictive covenant contained in the partnership agreement. The covenant, if enforced, would prohibit the plaintiff for ten years from practicing medicine in Corvallis or within 30 miles of that city.

The trial court entered a decree denying relief to the plaintiff in his suit for dissolution, and also denying injunctive relief to the defendants. All parties appeal.

The plaintiff is a surgeon formerly associated with the Corvallis Clinic. The Corvallis Clinic was organized by three doctors in 1947. By 1962 seventeen doctors, ten of whom were partners, were associated with the clinic. After having been employed by the clinic for almost two years, the plaintiff became a partner in 1953. Some of the defendant partners had entered the firm before the plaintiff did, and others entered after the plaintiff had become a partner. The provisions of the partnership agreement material to this case were renewed each time a new partner came into the firm.

Growth and prosperity did not produce harmony. Differences about the proper management of the clinic arose between the plaintiff and his fellow doctors. The areas of disagreement between the plaintiff and his partners grew, and the working relationship among the partners began to suffer. The disagreements involved honest differences of opinion about the best way to run a business, and did not reflect adversely upon the professional abilities of any of the parties.

The defendants seek to enforce a provision of the agreement which permits a majority of the partners to expel a partner and buy his interest. They also seek to enforce a restriction upon the right of the departing partner to compete with the partnership. Neither provision is ambiguous.

The trial court held that the plaintiff was released from his obligation to comply with the terms of the agreement because the defendants breached the agreement before he sought to dissolve the partnership. The

majority, over the protest of the plaintiff, had created an executive committee to:

> "* * * manage generally all affairs of the partnership except that the committee shall have no authority to enter into any employment contract with a physician for services as a medical doctor, shall not take any action which is discriminating against any partner or partners, and shall exercise no power expressly reserved to the partnership by the Partnership Agreement."

The court reasoned that the majority of the partners had no right to form the executive committee and to delegate to that committee the management of the business affairs of the clinic.

Section 8 of the partnership agreement reads as follows:

> "All partners shall have an equal share in the management of the business and all decisions pertaining to the partnership, not herein specifically provided for, including amendment of this contract, shall be decided by a majority vote of the partners. Provided that any amendments of this agreement shall not be discriminating against any partner or partners."

ORS 68.310 (8) provides as follows:

> "Any difference arising as to ordinary matters connected with the partnership business may be decided by a majority of the partners; but no act in contravention of any agreement between the partners may be done rightfully without the consent of all the partners."

■ The public statute and the private agreement must be examined together. See 1 Rowley, Partnership 500, § 18h (2d ed 1960).

■ Fundamental changes in a partnership agree-

ment may not be made without the consent of all the parties. This is true even though the agreement may provide that it can be amended by majority vote. The power to amend is limited by the rule that, unless unanimous, no amendment may be in contravention of the agreement. ORS 68.310 (8).

The plaintiff insists that even though he had agreed in advance that the majority of the partners could amend the agreement, the executive-committee amendment was so broad that it was inconsistent with the agreement between the partners and was beyond the scope of the power of amendment under the agreement.

The defendants insist that the institution of an executive committee was well within the terms of the agreement. They further contend that even if the creation of the committee was not within the expressed grant of power to the majority to amend the agreement, the right to delegate routine functions to a committee would have to be implied from the purposes for which the partners had associated themselves. At the heart of this dispute is the question of the scope of the management powers delegated to the committee.

The amendment provided that any action taken by the committee could be altered or canceled by a majority vote of the partners. The majority of the partners retained the right to reconstitute the committee. All members of the partnership retained the right to attend all meetings of the committee. However, when attending a meeting, any partner who was not a member of the executive committee was not entitled to participate in committee deliberations unless given permission to do so.

A safeguard of the rights of all partners was provided in the requirement that ten days must elapse

before any action, other than emergency action, taken by the committee would become effective. This delay gave a majority of the partners a power to override the committee at any time during the ten days that intervened between committee action and execution. There is no evidence that the emergency clause was intended to subvert the right of review. On the contrary, it is presumed that the clause was intended to be employed in good faith. We hold that these limitations upon the committee's powers kept the delegation well within the scope and intent of the original partnership agreement.

The plaintiff for several years had not shared some of the views of the majority with reference to billing practices. These differences in views were expressed at various partnership meetings. It appeared likely that the differences would continue. The plaintiff's views were no less likely to prevail after the committee was formed than they were before it was created.

When it appeared to a majority of the partners that dissension was defeating the purposes for which the partners had associated themselves, they had a right to buy out the dissenting partner. The plaintiff understood this when he became a partner.

The plaintiff contends that, even if there had been no breach of the agreement by the defendants, the court should not enjoin him from practicing medicine in the city of Corvallis and the surrounding territory. The plaintiff says that the hardship to him would greatly outweigh any resulting benefit to the remaining partners. He also argues that the community will suffer if the injunction is allowed.

■ While it is true that courts of equity may refuse

to enforce contracts if great hardship will be suffered on one side without a compensating benefit on the other, we do not believe this is a case that justifies the repudiation of the contract. In 1953 when the plaintiff was considering whether or not to accept the financial rewards offered by the partnership, he consulted counsel and delayed his decision for five months while he weighed the advantages and disadvantages of the partnership agreement. During these deliberations the restrictive covenant was his principal concern. In due course he executed the agreement and accepted the benefits thereof for several years. The benefits were substantial. As other young doctors came into the firm on the same terms, he renewed the agreement, binding the newcomers to the same covenant.

Obviously, it is a serious matter to uproot a professional man from the community in which he has developed his practice and served his profession. However, a breach of a covenant solemnly bargained for and entered into between thoughtful men of affairs is also a serious matter. *Cogley Clinic v. Martini,* 253 Iowa 541, 112 NW2d 678 (1962). If the plaintiff in this case can repudiate his agreement, then it would be idle to put such restrictions into similar partnership agreements.

Partnership under agreements which restrict future competition appears to be a common avenue of professional advancement. From the number of cases dealing with this kind of contract, it may be inferred that doctors, like other people, sometimes want to be relieved of contractual obligations. A young professional man may be willing to trade his future right to compete in a given community for an immediate and lucrative share in an established practice. Difficulties

arise when one of the contracting parties changes his mind. See *Freudenthal v. Espey,* 45 Colo 488, 102 P 280 (1909), 26 LRA (ns) 961, an employer-employe relationship rather than a partnership. See also cases collected in Annotations, 41 ALR2d 15 (time); 43 ALR2d 94 (area).

We do not believe the limitations as to space and time in this case are unreasonable. Relying upon the agreement, the partners invested substantial sums in the capital assets of the partnership. They have a right to the protection for which they bargained.

In view of the legitimate desire of the partners to provide realistic protection of their investment, the restriction of competition within 30 miles of Corvallis is not unreasonable. Because of the wide area from which the clinic draws its patients, the relocation of any former partner within 30 miles of Corvallis would defeat the purposes of the restriction. See *Cogley Clinic v. Martini,* supra (employer-employe); *Bauer v. Sawyer,* 8 Ill2d 351, 134 NE2d 329 (1956).

The time limitation is not unreasonable. While ten years is a substantial portion of the active life of a professional man, it is not uncommon for medical practitioners to enter into such covenants. See 41 ALR2d 15, supra at 212. Under all the circumstances of this case, there is nothing about the period of ten years that should render the covenant unenforceable.

The only evidence that the city of Corvallis will suffer by the removal of the plaintiff to another city came from the doctor with whom the plaintiff is presently sharing office space. The other evidence in the record indicates that surgical patients in Corvallis will not suffer undue hardship if the plaintiff is required

to live up to the bargain he made when he became a partner in the clinic.

■ Upon the whole record, the defendants were entitled to the enforcement of the agreement. A decree should be entered in their favor.

Reversed and remanded; costs to none of the parties.