Argued October 9, reversed and remanded December 12, 1975,
petition for rehearing denied January 13, 1976

HUNTER ET AL, *Respondents, Cross-Appellants, v.*
STRAUBE, *Appellant, Cross-Respondent.*
543 P2d 278

*Richard E. Alexander,* of Williams, Montague, Stark, Hiefield & Norville, P. C., Portland, argued the cause and filed briefs for appellant, cross-respondent.

*John R. Faust, Jr.,* Portland, argued the cause and filed a brief for respondents, cross-appellants. With him on the brief were Hardy, Buttler, McEwen, Weiss

& Newman, Paul N. Wonacott, Wood, Wood, Tatum, Mosser & Brooke.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, TONGUE, HOWELL, and BRYSON, Justices.

McALLISTER, J.

This suit was filed by the plaintiffs, Dr. Arthur F. Hunter and Dr. O. D. Haugen, to dissolve a three-man medical partnership in which the defendant, Dr. Kurt R. Straube, was the third member. The three doctors were radiologists practicing in Portland under the firm name of Lloyd Center X-Ray. The partnership was created by a partnership agreement dated July 26, 1969 and a written addendum dated November 24, 1971 which added the plaintiff Haugen to the partnership.

On September 11, 1974 the plaintiffs filed this suit in Multnomah County to dissolve the partnership and prayed for the appointment of a receiver and the winding up of the partnership. The defendant counterclaimed, alleging that he was entitled to continue the partnership business, to recover damages from plaintiffs for the breach of the partnership agreement, and to settle with the plaintiffs as withdrawing partners as provided by the partnership agreement.

The only regular pleading filed was the plaintiffs' complaint. Thereafter, the parties, at the request of the trial court, prepared a pretrial order stating the admitted facts and the contentions of the parties, which order was approved by the court on November 29, 1974. The case was tried on the facts admitted in the pretrial order and the issues framed by that order.

The pretrial order states the nature of the proceedings as follows:

"This is a suit of equity in which plaintiffs

seek judicial supervision over the winding up of the affairs of a partnership they claim is dissolved and a liquidation of respective partnership interests in accordance with Oregon's Uniform Partnership Law and defendant seeks continuation of the partnership business, damages for breach of the partnership contract, and a distribution to plaintiffs in accordance with the partnership agreement."

The trial court found that by the filing of this suit the plaintiffs "did not cause by express will a dissolution of their partnership with defendant." The court further found that since "the partnership continues as an entity," the court had no jurisdiction to wind up the affairs of the partnership. The court also dismissed the counterclaims of defendant because "no dissolution had occurred."

The pertinent portions of the partnership agreement read as follows:

"3. TERM: The partnership shall continue until the partnership is dissolved as herein provided.

\* \* \* \* \*

"16. TERMINATION: In the event of the death or retirement of any Partner or the voluntary liquidation of the partnership, the following procedure shall be observed:

"A. Death:

"(1) The death of any Partner *shall not dissolve the partnership as to the other Partners,* \* \* \*." (Emphasis added.)

"B. Retirement:

"The retirement of any Partner *shall not dissolve the partnership as to the other Partners,* and each Partner hereby does bind his estate, heirs or personal representatives

to receive the sums as in this paragraph computed as full acquittance and payment of his interest in this partnership and all undistributed or uncollected earnings therein and does hereby agree to execute such receipts and bills of sale, deeds, or other instruments of conveyance or satisfaction as may be required to carry out the terms, conditions and stipulations herein set forth. (Emphasis added.)

"(1) Upon the voluntary or involuntary retirement of a Partner from the partnership, *or upon the withdrawal of a Partner from the partnership,* the books of the partnership shall be closed as of the first day of the month in which the retirement or withdrawal becomes effective, and such Partner shall be entitled to receive the following sums and no more, all subject to Paragraph 16 B(2) hereof:

"(a) An amount equal to the capital account of the withdrawing or retiring Partner as of the close of the last fiscal year of the partnership, adjusted for additional capital investment subsequent thereto and reduced by any distributions during the current fiscal year of net profits in excess of said net profits. The capital amount, as so determined, shall be paid in forty-eight (48) equal monthly installments, with the first installment payable on the fifth (5th) day of the fourth (4th) month following the closing date and remaining installments on the fifth (5th) day of the ensuing months, all without interest.

"(b) An amount equal to the retiring or withdrawing Partner's share in the undistributed net profits, if any, of the partnership as of the closing date

determined as provided in said Partnership Agreement reduced by any accounts payable relating to the collection of accounts receivable. The amount of such undistributed profits shall be paid as soon as reasonably practical.

"(c) A share in future income of the partnership, as evidenced by the accounts receivable for services of the partnership as of the closing date, computed as provided in this subparagraph. Accounts receivable shall be valued at 75%, except that accounts which were first billed more than one year prior to the closing date shall be valued at zero. The amount to which the retiring or withdrawing partner shall be entitled shall be computed on the basis of the following formula:

```
(Percentage   )        (Value     )        (Number of full years)
(   of        )        (  of       )        (as Partner of partner-)
(participation)        (Accounts   )        (ship, or predecessor)
(   in        ) X      (  as       ) X      (partnerships, as of the)
(net profits  )        (computed   )        (first day of the current)
(   of        )        (           )        (partnership year        )
(Partner      )        (           )        (_____ )
(             )        (           )        (          20            )
```

"For example, if the total value of such accounts receivable is $40,000, and the retiring or withdrawing Partner is entitled to 25% of the net profits on the closing date, such Partner would receive $500 for each of such full years as a Partner. The amount thus determined shall be paid as a distribution of income in forty-eight (48) equal installments, without interest, at the same times as provided for under subparagraph (a) above. (Emphasis added.)

"(2) Non-Competition:

"*If a Partner shall voluntarily withdraw*

or retire and shall engage in the practice of medicine or participate in any association, group or clinic so engaged within a forty-mile radius of the City of Portland, Oregon, during a period of three years from the effective date of withdrawal or retirement, such Partner shall have no right to receive any distributions under Paragraph B(1) above, from the date he so engages in the practice of medicine. (Emphasis added.)

"(3)  Procedure re Retirement:

"(a)  Any Partner voluntarily resigning from the Partnership shall give six months' written notice to each of the other Partners of his desire to retire, and such retirement shall take effect six months from the date of delivery of such notice to the other Partners."

■■ Plaintiffs contend that they expressed their will to dissolve the partnership by the filing of this suit, citing *Carrey v. Haun et al*, 111 Or 586, 592, 227 P 315 (1924). We agree with this contention. See *Clark v. Allen et al*, 215 Or 403, 410, 333 P2d 1100 (1959). However, we disagree with the contention of the plaintiffs that by the filing of this suit they are entitled to a dissolution in accordance with the Uniform Partnership Law. The plaintiffs ignore the provision of the partnership agreement that limits the dissolution to the withdrawing partners and expressly provides that "the retirement of any Partner shall not dissolve the partnership as to the other Partners".

■ The power to dissolve a partnership is governed by ORS 68.530 and provides for dissolution both without violation of the partnership agreement and in contravention of the partnership agreement. In either case, it is clear that *if* the partnership agreement pro-

vides for the distribution of the partnership property the rights of the partners are governed by the partnership agreement rather than by the Uniform Partnership Law. See provisions in ORS 68.310, 68.420, 68.440, 68.590, 68.600 and 68.620.[①]

■■ In the case at bar the plaintiffs had the power to dissolve the partnership by electing to withdraw as partners, a choice which they made by filing this suit. Plaintiffs, however, did not have the right to dissolve the partnership without complying with the terms of the partnership agreement. As was succinctly stated in *Straus v. Straus*, 254 Minn 234, 94 NW2d 679, 686 (1959):

> "A distinction must be recognized between the power to dissolve a partnership and the right to dissolve a partnership. Any partner may have the power to dissolve a partnership at any time * * * and this is true even though such dissolution is in contravention of the partnership agreement. * * * If a partner exercises his power to dissolve a partnership, but does not have the right to do so, he must suffer the penalties * * *."

■ The pertinent provisions of this partnership agreement have been set out earlier verbatim in the opinion. In brief, the agreement required the plaintiffs to give defendant, the remaining partner, six months' notice of their desire to withdraw and provided that the "retirement shall take effect six months from the date of delivery of such notice to the other Partners." The agreement also provided a specific plan of distribution to a withdrawing partner and con-

---

[①] All the provisions cited, relating to the rights and duties of the partners, make clear that they are subject to any agreement between the parties to the contrary. For example, ORS 68.620 provides:

> "Rules for distribution. In settling accounts between the partners after dissolution, the following rules shall be observed, subject to any agreement to the contrary: * * *."

tained a restriction on competition. It should be noted that Oregon law does uphold non-competition clauses if freely entered into by the partners and reasonable in effect. Such clauses are typical of professional partnerships. *McCallum v. Asbury,* 238 Or 257, 263-264, 393 P2d 774 (1964).

■ The plaintiffs attempted by filing this suit to divest the defendant from his right to continue the partnership business, which he clearly had the right to do. They attempted to avoid the requirement of giving six months' notice. They also attempted to render nugatory the provisions of the partnership agreement governing the rights to the partnership property upon the withdrawal of a partner. We think the plaintiffs cannot, by merely calling their withdrawal a dissolution, escape from the liabilities which they assumed when they executed the partner-ship agreement. The plaintiffs have not cited a single authority in support of their contention.

A recent case from our sister state of Washington is in accord with our decision today. *Ashley v. Lance,* 75 Wash 2d 471, 451 P2d 916, 920 (1969) and 80 Wash 2d 274, 493 P2d 1242, 1245 (1972), in a very similar fact situation, held that the restrictive cove-nant in the partnership agreement would be enforced for the benefit of the remaining partner. The with-drawing partners could not avoid the covenant by de-vising "the legalistic theory that they would dissolve their partnership * * * and not withdraw therefrom." 451 P2d at 918.

In *Devlin v. Rockey,* 295 F2d 266 (7th Cir 1961), the partnership agreement provided for termination upon a two-thirds majority vote of all the partners or upon the unanimous consent of all the partners. Two of the ten partners sought a decree declaring they had effected a dissolution of the partnership, al-

leging that the partnership was one at will and therefore subject to dissolution by any partner at any time. The court held that, despite use of the word dissolution by the plaintiffs, it was clear that they were to be treated as withdrawing partners under the agreement, the partnership was not dissolved, and distribution to the plaintiffs was to be controlled by the partnership agreement provisions pertaining to withdrawal of a partner. 295 F2d at 269.

Similarly, in *Adams v. Jarvis,* 23 Wis2d 453, 127 NW2d 400 (1964), the partnership agreement specifically provided that the partnership would not terminate upon the withdrawal of a partner. The plaintiff withdrew but contended this effected a dissolution under a Wisconsin statute identical to ORS 68.-510.[2] The court refused to construe the statute so as to invalidate an otherwise enforceable contract. In one sense plaintiff's withdrawal constituted a dissolution, the court said, but the partnership was not wholly dissolved so as to require complete winding up. The partnership continued to exist under the terms of the agreement. 127 NW2d at 403-404.

*Gibson v. Angros,* 30 Colo App 95, 491 P2d 87 (1971), involved a covenant not to compete upon withdrawal of a partner from the partnership. Plaintiff argued that his notice to resign from the partnership operated as a dissolution and he was therefore no longer bound by the restrictive covenant. The court held that plaintiff's actions constituted a voluntary retirement under the terms of the partnership agreement, and the terms of the agreement which became operative upon such retirement were not rendered

---

[2] ORS 68.510 provides:

"Dissolution defined. The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business."

nugatory by the dissolution of the partnership. 491 P2d at 91.

■ We hold that the filing of this suit by the plaintiffs was an election by each of them to withdraw from the partnership in contravention of the partnership agreement. Under those circumstances the withdrawal entitles the defendant to continue the partnership business and to settle the affairs of the partnership in accordance with the terms of the partnership agreement. The defendant also has the right to any damages he may have suffered on account of the plaintiffs' breach of the provision for six months' notice of withdrawal.

This suit is reversed and remanded to the court below for further proceedings consistent with this opinion.

Reversed and remanded.