559 P.2d 693

**Don J. BARRETT dba Don Barrett Agency, Appellant,**

v.

**Albert J. DUZAN and Marian L. Duzan, his wife, Appellees.**

No. 1 CA–CIV 2990.

Court of Appeals of Arizona, Division 1, Department A.

Dec. 16, 1976.

Rehearing Denied Jan. 21, 1977.

Review Denied Feb. 8, 1977.

Favour & Beck by Thelton D. Beck, James B. Sult, Prescott, for appellant.

Thur, Preston & Hungerford by Robert L. Hungerford, Jr., Scottsdale, for appellees.

## OPINION

DONOFRIO, Presiding Judge.

This is an appeal by Don J. Barrett dba Don Barrett Agency from a judgment of the Superior Court denying him recovery in his action against the Appellees/Duzans for a real estate commission on an exclusive listing agreement.

On May 9, 1972, Appellees were the owners of a certain restaurant and lounge located in Prescott Valley, Arizona, known as the Coachlight Inn. On that date, they entered into an exclusive listing agreement for the sale of this property with the Appellant, who was a duly licensed broker under the laws of Arizona. This listing contained an asking price for the Inn of $195,000.00, and gave to Appellant the "sole and exclusive rights to sell, present any offer he may receive, or to exchange, or to rent or lease" the property.

It also provided that in the event the realtor produced a purchaser in accordance with the terms of the listing, or "in the event a sale is made by owner," during the term of the listing agreement then for services rendered the Appellees agreed to pay the Appellant ten percent (10%) of the list price, or of any lesser price which the Appellees accepted. The term of the listing agreement was for a period of 180 days. The agreement was irrevocable.

Following the execution of the listing agreement, Appellant commenced the performance of his obligations thereunder and referred the listing to the Multiple Listing Service of Prescott, and during the month following the signing of the listing agreement the Coachlight Inn was advertised by Appellant in the Los Angeles Times, the Chicago Tribune and the Arizona Republic.

On May 27, 1972, Gordon Suggs became the manager of the Coachlight Inn, and shortly thereafter became aware that the Weedons and Herrells (with whom the appellees were dealing) were prospective purchasers of the Inn. Suggs formed an interest in obtaining the Inn himself, and, being aware that the Appellant had an exclusive listing on the Inn, worked with and through the Appellant in negotiations between himself and the Appellees. Appellant obtained appraisals on both the Inn and on Mr. Suggs' property. It is to be noted that the Appellees gave this appraisal to the Weedons and the Herrells who later based their offer upon it.

After these appraisals of the Inn and of Suggs' property were obtained, Appellant took Appellee/Mrs. Duzan to inspect the Suggs property. Thereafter Appellant participated in several discussions with Mr. Suggs and Mrs. Duzan in attempting to work out an exchange agreement. No written agreement was ever reached between the Appellees and Mr. Suggs. Mr. Suggs never became a ready, willing and able buyer of the Coachlight Inn.

Sometime in June, 1972, the Weedons and Herrells entered into negotiations with the Appellees for the purchase of the Inn. The Weedons and Herrells were aware of Appellant's exclusive listing agreement, but, from the very beginning of their negotiations with Appellees, they made it clear that they would not deal with a realtor. Mrs. Duzan, thereafter, actively participated in negotiations with the Weedons and Herrells. Mrs. Duzan told the Appellant that the Herrells and Weedons did not want Appellant at the negotiations.

The Appellees, the Herrells and the Weedons ultimately reached an agreement on the purchase and sale of the Inn. The agreed purchase price was $160,000.00.

After an oral agreement had been reached between the Appellees, the Herrells and the Weedons, but prior to September 1, and with Appellees' prior knowledge and consent, attorney John Burke called Appellant. Mr. Burke informed him that the

amount of the commission involved was proving a difficult point for the Appellees, and that if Appellant would accept $7,500.00 the sale could be closed. That conversation was followed on August 29, 1972, by a letter from attorney Burke to Appellant. The letter requested that Appellant execute an agreement to accept $7,500.00 as commission for the sale of the Inn by Appellees to the Herrells and the Weedons. Appellant immediately executed the requested agreement.

On September 1, 1972, Appellees, the Weedons and the Herrells executed an agreement for the sale and purchase of the Coachlight Inn. An escrow for the transaction was also opened on September 1, 1972. The contract of sale was subject to the Weedons and Herrells applying and obtaining a conventional mortgage refinancing loan from Great Western Bank in the amount stated in the escrow instructions.

Pursuant to the sales agreement, the Appellees bound themselves to deliver title to the Inn at the close of escrow. The Weedons and Herrells took possession of the Inn and operated it until November 7, 1972 when the Weedons and Herrells were informed that they had been unsuccessful in obtaining financing with Great Western Bank. The property was returned to Appellants who in turn deeded in lieu of foreclosure to the guarantor on the mortgages existing against the property.

We first deal with the issue wherein Appellant/Broker urges that when the owners of the Coachlight Inn entered into the exclusive listing contract, the owners severed their right to independently produce a sale of the property. With this contention, we must disagree.

In the original listing agreement, the language of the contract specifically and clearly recognized the possibility that the Appellees might independently produce a sale of their own property. However, the contract provided that any sale by the owners would still generate a commission for the Broker/Appellant.

The pertinent provision of the listing contract reads:

"In the event the Realtor produces a purchaser in accordance with the above terms and conditions, *or in the event a sale is made by Owner(s)* or through any other agent during the terms of this exclusive listing, then for services rendered the Owner(s) agree to pay to the realtor ten percent (10%) of the above price or of any lesser price which Owner(s) accept." (Emphasis added)

Also the escrow instructions dated September 1, 1972, provide for the real estate broker's commission on the Appellees' independently derived sale.

Appellant is seeking recovery under two theories. One theory is for the contractual commission claimed due as the result of securing a ready, willing and able purchaser under the exclusive listing agreement. The second theory is in the alternative for $7,500.00 provided for in the modification of the terms of the listing agreement.

Inasmuch as the validity of the modification itself is questioned we will deal with this issue next. The escrow instructions refer the reader to a letter signed by Appellant on August 29, 1972, approximately three days before escrow was opened. This letter states that:

"The undersigned hereby agrees to accept Seven Thousand Five Hundred Dollars ($7,500.00) as and for total commission which shall be due the DON BARRETT AGENCY in connection with the sale of the premises known as Coachlight Inn, located at Prescott Valley, Arizona.

It is understood that the aforesaid sale of the Coachlight Inn will be handled through American Title Insurance Company under Escrow # 121,875 and that the above referenced commission shall be remitted to said DON BARRETT AGENCY at the close of said escrow.

DATED at Prescott, Arizona this 29th day of August, 1972.

DON BARRETT AGENCY
By /s/ Don J. Barrett"

There is no doubt that the parties to a contract may by their mutual agreement

modify a contract between themselves. Our Supreme Court holds that, "* * * any detriment to promisee, or benefit to promissor, constitutes a valid and sufficient consideration for a new promise which would in effect modify terms of the original agreement." *Stoval v. Williams,* 100 Ariz. 1, 4, 409 P.2d 711, 713 (1966).

▪ The modification between Appellant and Appellees only changed the amount of commission due on a binding sales agreement. Both parties had benefits and detriments arising from the modification agreement. Appellant would enjoy the success of a sale and have his burden of promoting the property lifted. On the other hand, he would suffer in the respect that he would be agreeing to accept less commission than expected. Appellees would benefit because of the proposed sale of their property. However, they would suffer in the respect that the sale would be substantially less than was contemplated at the time the listing was entered into. Everything in this case pointed to a valid mutual agreement between the parties. In addition, evidence shows that the Broker was not against the sale by the Owners even though it was of a lesser sum than the listing's asking price. In fact, he did everything to promote the sale, and executed the agreement to reduce his commission on the very same day that he was requested to do so. Never once did he voice a breach of contract on the part of the Appellees, but did everything in his power to promote the actions of the Appellees.

The one crucial remaining question is whether Appellant is entitled to a commission under any of these theories.

▪ In this connection his entitlement to a commission must be examined in light of the sales agreement. We would agree that, "it is the almost universally accepted rule of law that, in the absence of a specific contract to the contrary, when a real estate broker has brought together the parties to a sale or exchange of real estate, and they have agreed fully on the terms and *entered into a binding contract* for such sale or exchange, his duties are at an end and his commission is fully earned, and it is immaterial that the parties to the contract rescind mutually or that one or the other thereof defaults and the sale or exchange is not fully effected." (Emphasis added). *Lockett v. Drake,* 43 Ariz. 357, 360, 31 P.2d 499, 500 (1934). Cf. *Donaldson v. LeNore,* 112 Ariz. 199, 540 P.2d 671 (1975). However, this is not the case at bar.

The facts in this case clearly show that the parties entered into a contract that was subject to the new buyers obtaining a refinancing loan from Great Western Bank.[1] Furthermore, the trial judge found that the sales agreement was a *conditional contract* in which the condition was never met.[2]

---

1. "The terms and conditions of this Agreement are as follows:

 1. * * *

 (c) * * * Buyers shall apply for a new loan from GREAT WESTERN BANK AND TRUST in an amount sufficient to payoff the existing Realty Mortgage in the original principal amount of FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00) as described in Item 1 above. Said new loan shall be secured by a First Realty Mortgage on the real property hereinabove described. In the event that GREAT WESTERN BANK AND TRUST is unwilling to subordinate their liens to the lien of a new mortgage, then Buyers shall have the right to avoid this Agreement of Sale and terminate the same and obtain refund of all monies theretofore paid hereunder. Buyers shall also have the right, at their option, to assume the existing Mortgage as described in Item 1 above in lieu of obtaining the refinancing as described in this paragraph 1(c)."

 "The close of this escrow is subject to buyers applying and obtaining a conventional mtg. loan from Great Western Bank in the approx. amount stated above as part of the cash payment herein. All costs for obtaining said loan will be paid by the buyers."

2. "What was the intention of the parties as deduced from the language of the contract, the circumstances and the purpose sought to be accomplished by the contract?

 The Agreement of Sale discloses as follows: That the original mortgage in the sum of $50,000, which was to be refinanced was originally held by Prescott Valley and subsequently sold, as the Exhibits show, to the Great Western Bank; Further, Prescott Valley held a second mortgage in which the Plaintiffs were duly bound to pay under the Contract. In addition, the testimony at trial shows the Great Western

From our review of the agreements, we agree with the lower court's finding that the sales agreement was a conditional rather than a binding sales contract. We are by no means holding that a binding contract is a prerequisite to the Broker earning his commission. It is elementary law that when a Broker presents a purchaser who is ready, willing and able to buy on the exact terms authorized by the seller, a Broker is entitled to his commission regardless of whether a contract is subsequently executed. *Trimmer v. Ludtke,* 105 Ariz. 260, 462 P.2d 809 (1969). There are, however, numerous cases dealing with the issue of whether a real estate broker is entitled to a commission upon the entrance of the listed owner into a conditional sales contract for the listed property. In *Trimmer,* supra, our Supreme Court stated, " * * * where as here, a broker presents a buyer who executes a conditional contract and is willing to buy only if and when condition is fulfilled, a commission is not earned." See, also *Watts v. Hogan,* 111 Ariz. 536, 534 P.2d 741 (1975); *Management Clearing, Inc. v. Vance,* 106 Ariz. 95, 471 P.2d 707 (1970); *Diamond v. Haydis,* 88 Ariz. 326, 356 P.2d 643 (1960); and *Blaine v. Stinger,* 79 Ariz. 376, 290 P.2d 732 (1955).

We see no difference whether the owner or the real estate agent procured the buyer. A conditional sales agreement does not vest the commission promised the agent until that condition is satisfied. The condition in this case was never satisfied, and the appellant's commission never vested.

For the hereinabove reasons we find that the Findings of Fact and the Judgment of the lower court are correct as a matter of law. Affirmed.

OGG and NELSON, JJ., concur.

Bank was the bank utilized by Prescott Valley and Prescott Valley's House Counsel. Mr. Burke drew the Escrow Agreement and it seems to the Court that the provision in the Agreement providing for refinancing of the $50,000 mortgage could have only been accomplished by Prescott Valley subordinating their second mortgage to the refinanced mortgage, and further, Prescott Valley had agreed to guarantee the refinanced mortgage. It seems to the Court that the parties intended that the extent of Plaintiffs' duty was to refinance the $50,000 only through Great Western Bank. In addition, it seems that this view is buttressed by the fact that Great Western Bank is mentioned again in Paragraphs 8 and 18 of said Agreement of Sale. It, therefore, follows that Plaintiffs are entitled to void, terminate and rescind the sale against the Defendants Duzan."