Argued and submitted September 10, reversed and remanded
with instructions February 2, reconsideration denied February 25,
petition for review denied March 23, 1982 (292 Or 722)

LADD et al,
*Appellants,*

*v.*

HIKES,
*Respondent.*

(No. 36001, CA 18896)

639 P2d 1307

Robert L. Allen, Portland, argued the cause for appellants. On the briefs were Jack H. Dunn, and Morrison, Dunn, Cohen, Miller & Carney, Portland.

William E. Flinn, Eugene, argued the cause for respondent. With him on the brief was Flinn, Brown & Roseta, Eugene.

Before Buttler, Presiding Judge, Warden, Judge, and Holman, Senior Judge.*

HOLMAN, S. J.

Buttler, P. J., dissenting.

---

\* Holman, S. J., *vice* Warren, J.

## HOLMAN, S. J.

This is a suit by a medical partnership (Clinic) to enjoin defendant from the practice of medicine in the area of the city of Corvallis. It is based upon a non-competition provision included in an agreement by which the Clinic employed defendant at a salary as an associate for a period of two years. Plaintiffs appeal from a decree denying an injunction.[1]

There is no issue concerning the propriety of the scope of the limitation in the non-competition agreement as to either area or time, because identical provisions were at issue in unrelated litigation and were found to be enforceable.[2] The contract of employment did not so provide, but it was contemplated that at the end of the contract period the Clinic, if satisfied with defendant, would offer him a partnership and that defendant, if he then desired, would accept. There was no requirement that a partnership be either offered or accepted. Defendant, after two years of service under the contract, commenced practice on his own in the city of Corvallis and has attracted a considerable number of the Clinic's former patients. This case resulted.

While defendant has pleaded numerous defenses, one of the principal ones is that certain facts concerning the terms of any partnership agreement that might ensue were not disclosed to him. While he was never offered a partnership and he was unwilling to accept one under the Clinic's terms, the parties recognized that it was contemplated that a partnership would probably result from the relationship and that the terms of any ensuing partnership were a proper subject of disclosure to, and consideration by, defendant in deciding whether to accept a two-year contract as an associate. Defendant's contract provided for an annual salary of $35,000, plus an added sum for a productivity factor (figured upon a complicated formula) as justified by defendant's earnings for the Clinic. On the other hand, the partnership agreement used by the Clinic provided for the profits of the Clinic to be divided between

---

[1] The suit also included a claim for damages for breach of contract, but this is not made an issue on appeal.

[2] *McCallum v. Asbury*, 238 Or 257, 264, 393 P2d 774 (1964).

partners, one-half upon the productivity factor and one-half equally. Defendant was an opthamologist, a high earning specialty, and the partnership method of division would probably not have been as beneficial to him as if the division were to be figured on a straight productivity basis. He claims that this different method of distribution was not disclosed to him, that he would not have entered into an agreement as an associate with the Clinic had he known of it, and that, as a result, he did not desire a partnership and it would be inequitable to enforce the non-competition provision, because he would have wasted two years of his productive life available to establish a practice.[3]

The trial court found "that the defendant was informed of these matters" prior to signing his contract as an associate. There is no dispute about defendant having been told what he could expect in total dollars under the contract offered to partners, because the earnings of a senior opthamologist were disclosed to him. Defendant also claimed that other provisions of the contract offered to partners were not disclosed to him, but the matter of the distribution of profits was his major concern. The trial court also found against him on the issue of these additional disclosures. An examination of the testimony shows that the disclosures were in dispute, and we see no reason to find the facts differently than did the trial judge.

Nevertheless, the trial judge found in favor of defendant on two separate defenses. The first was pleaded as follows:

"The non-competition provision of the employment contract is unconscionable for the reason that the employment contract vests in plaintiffs the unconditional power to subject defendant, as an employee, to the restrictions of the non-competition provision."

Relative to this defense, the trial court found as follows:

"The covenant in this case is contained in an employer-employee contract. The Court feels that such agreement must be distinguished from those contained in partnership agreements. Different motivations of the parties are

---

[3] Defendant views his contract as an associate as being greatly different from the contract between the partners relative to the manner in which profits were distributed. He does not recognize his $35,000 base salary as an associate as a means of distribution by other than productivity.

involved. A recent graduate of medical school needs to find an income to provide for his family and to pay for his school expenses. There is not quite the same arms-length relationship in entering into employment agreements. A partner has gained the protection and benefit of that agreement and therefore should not complain if it is enforced against him. An employee has not received this benefit. In this respect there has been no mutual obligation."

It is not altogether clear what the trial judge had in mind. Apparently he was impressed by defendant's contention that there is a relevant difference between the use of a non-competition agreement between partners and the use of one between an employer and an employee. Defendant's need for money at the time he entered into the contract seemed to the trial court to make it inequitable to enforce the non-competition provision against defendant. However, the benefits of the contract to defendant were great: he walked into a ready-made medical practice at a guaranteed salary without the necessity of expending any money for office space, employees, equipment, liability insurance and all the other expenses of an independent practice, all of which the Clinic was obligated to furnish. We believe the trial court to have been in error in refusing to enforce the provision on this basis. The benefits to an employee and those to a partner in those circumstances are not so much different as to form a basis for treating them differently. There was sufficient consideration to support the contract.

The principal basis for the trial judge's decision was his finding in accordance with defendant's contention that the restrictive provision was contrary to public policy. Such contracts between physicians have previously been approved by the Supreme Court of this state.[4] However, since that time the Oregon Medical Association has adopted a resolution to the effect that the use of such restrictive covenants are "not generally conceived in the public interest."[5] In addition, defendant points out that the Supreme

---

[4] *McCallum v. Asbury, supra,* n 2.

[5]

    "(1) That the Oregon Medical Association considers contracts of employment, partnership, or sale of a medical practice, which impose

Court has adopted a disciplinary rule forbidding such provisions between lawyers as being against public policy.[6] The Clinic, on the other hand, points out that both the Oregon legislature and the Board of Medical Examiners of Oregon have adopted, respectively, legislative and administrative regulations concerning physicians and have never prohibited the use of such provisions. In 1977, the initial draft of a legislative bill[7] provided that a non-competition agreement between an employer and employee was void. The bill, as finally enacted,[8] specifically permitted the use of such provisions upon initial employment only. The statute is a general one and not specifically directed toward the medical profession.

None of the above is decisive, except the Supreme Court's decision. The Oregon Medical Association is a voluntary organization without public sanctions or authority. The opinions of the Supreme Court upholding such provisions in a medical contract are binding upon this court. Until such time as that court proscribes such provisions as being contrary to public policy when used by the

---

geographical or time restrictions on an individual physician's ability to practice medicine, not generally conceived in the public interest.

"(2) That the Oregon Medical Association discourages restrictive covenants in medical practice among its members; and that the Association urges that members who are parties to existing agreements re-negotiate such contracts so as to delete portions relating to restrictions which are designed to prevent any party from practicing medicine, either for a given period of time or within a given geographical area, should that party choose to end association with other parties to the contract.

"(3) That the Oregon Medical Association regards as incumbent upon its members who may henceforth cause or agree to the inclusion of a restrictive covenant clause in a contract of employment, partnership, or sale of a medical practice, the responsibility to advise other parties to the agreement of the Association's policy with respect to restrictive covenants; and to fully disclose the potential ramifications of any such clause.

"(4) That the policy statement outlined in Recommendations 1, 2 and 3, should be disseminated by appropriate means to the entire membership."

[6] Disciplinary Rule 2-108, Code of Professional Responsibility.

[7] House Bill 2615.

[8] ORS 653.295.

medical profession, this court will enforce them.[9] Under the factual findings of the trial court, differentiated from his legal conclusions, we see no reason not to enforce the provision.

The decree of the trial court is reversed and remanded with instructions to enter an order enjoining defendant in conformance with the restrictive provision of the parties' contract.

**BUTTLER, P. J.,** dissenting.

Because I would affirm the judgment of the trial court, I respectfully dissent.

I would prefer to base my dissent on the ground that a covenant not to compete between or among members of the medical profession is not enforceable as a matter of public policy. However, the majority is correct in saying that the Supreme Court has upheld a covenant, essentially identical to the one here involved, between partners in the same medical clinic as these plaintiffs, where the clinic sought enforcement against a withdrawing partner. *McCallum v. Asbury,* 238 Or 257, 393 P2d 774 (1964). Others, too, have been approved. *Hunter v. Straube,* 273 Or 720, 543 P2d 278 (1976). We are not free to overrule those cases, but, I am hopeful the Supreme Court will reconsider them and adopt a public policy for this state recognizing that the medical profession is affected with a public interest which precludes its members from agreeing among themselves that one or more of them may not fill the public need for his, her or their services in a given community.

It is not my purpose to explore the field in depth. It is sufficient to point out that at common law covenants not to compete were considered void as against public policy, with only narrowly drawn exceptions: when they are executed ancillary to a contract of sale of a going business or to a contract of employment and are reasonable as to duration and territorial extent. The underlying theory of

---

[9] The trial judge did find that defendant possessed special skills that were not otherwise available in the city of Corvallis. The basis for such a factual finding is not clear. There was no showing that the skills are not available in the neighboring city of Eugene, and the Clinic employed, as defendant's replacement, a person who would appear to have somewhat similar skills.

those two exceptions is that the buyer of a going business (including its goodwill), and the employer of one who, by virtue of his employment, would be in a position to exploit customer lists or contracts, or trade secrets, has cognizable rights which require reasonable protection in equity, when that protection is not injurious to the public interest. The Supreme Court has recognized the foregoing history of the rules. *See, e.g., North Pacific Lumber Co. v. Oliver,* 286 Or 639, 649, 596 P2d 931 (1979).[1] The enforcement of such covenants under those limited business-related circumstances, so long as the restraint is reasonable in time and space, was, and still is, justified.

However, to extend those rules to the professions, particularly the medical and legal professions, is to ignore both the personal nature of the services performed, the public need for them and the confidential and intimate relationships which develop between doctor-patient and lawyer-client. The right of one to select his or her physician and lawyer is fundamental and ought to be encouraged, not discouraged. The Supreme Court has adopted a disciplinary rule (DR 2-108(A))[2] which prohibits such covenants between lawyers. I think it is safe to say that the public need and demand for doctors is, generally, greater than the need and demand for lawyers; *a fortiori,* such covenants between

---

[1]

"Covenants binding a person not to exercise his trade or profession for a period of time in a particular area are contracts in restraint of trade disfavored at common law. Nonetheless, courts will uphold them where they are reasonably necessary to protect a legitimate interest of the person in whose favor they run, do not impose an unreasonable hardship upon the person against whom they are asserted, and are not injurious to the public interest. * * * " *North Pacific Lumber Co. v. Oliver,* 286 Or 639, 649, 596 P2d 931 (1979).

[2] Oregon State Bar Disciplinary Rule DR 2-108(A) provides:

"(A) A lawyer shall not be a party to or participate in a partnership or employment agreement with another lawyer that restricts the right of a lawyer to practice law after the termination of a relationship created by the agreement, except as a condition to payment of retirement benefits."

Prior to the adoption of that rule in 1970, Ethics Opinion 127 (1963), condemned such agreements between lawyers as being "inappropriate" and in "bad taste." Under the rule, they are not simply bad form; they are prohibited. It has been argued that since the court's decision in *McCallum v. Asbury, supra,* in 1965, the public policy of the state has changed, as evidenced by DR 2-108(A). However, a covenant between doctors was approved in *Hunter v. Straube, supra,* where the court said: "Such clauses are typical of professional partnerships," citing *McCallum.*

doctors should be held to contravene public policy[3] and not be enforced. It may be that both the medical and legal professions are progressing toward becoming nothing more than commercial enterprises and that a license to practice either profession is no more than a permit to make money by selling services, much as a fishmonger sells his wares. If that be the case, it is a doleful thought and the courts ought not accelerate the process.

Without belaboring the public policy basis for not enforcing the covenant here, I simply note that it is on that basis which this case should be decided. Because we are not free to approach the problem in that manner, I would decide the case on the ground that the plaintiffs have not sustained their burden of showing that injunctive relief is necessary here. Defendant is an ophthalmologist specializing in micro-glaucoma surgery, intraocular lens implants and the repair of retina breaks. Before defendant joined the clinic, patients seeking non-emergency eye care waited 90 days or more before they could see an opthalmologist at the clinic. Those who could not wait were referred elsewhere. The record indicates that after the defendant left the clinic, the ophthalmologist who replaced him was as busy as he wanted to be. Further, the clinic has referred patients to defendant, and he has assisted the clinic in surgery. It appears, therefore, that the clinic has all of the eye business which it can handle and does not need protection by way of enjoining defendant from practicing his specialty in Corvallis, or within 30 miles thereof, for a period of ten years. To so enjoin the defendant here would be to permit the doctors comprising the clinic to restrict the supply of ophthalmologists solely for their economic advantage. If, therefore, we are to treat this transaction as involving nothing more than a commercial business, the plaintiffs are not entitled to injunctive relief because they have not shown the need for that drastic remedy and because the covenant would be an unreasonable restraint of trade at common law.

---

[3] As the majority notes, the Oregon Medical Association has recognized that such covenants are 'not generally conceived in the public interest.' (55 Or App at at 805.)

It is curious that if the plaintiffs had shown a clear need for injunctive relief here, they would, at the same time, have shown that there is a public need for an ophthalmologist in the Corvallis area with defendant's qualifications. It seems apparent to me that to enjoin defendant under those circumstances would be injurious to the public interest, and that sounds very much like being in contravention of the public policy which ought to prevail here.