790 P.2d 752

**PHOENIX ORTHOPAEDIC SUR-GEONS, LTD., an Arizona professional corporation, Plaintiff/Appellee,**

v.

**Richard PEAIRS and Jane Doe Peairs, husband and wife, Defendants/Appellants.**

No. 2 CA–CV 89–0118.

Court of Appeals of Arizona, Division 2, Department A.

Nov. 27, 1989.

Review Denied May 8, 1990.

**56**

Rawlings, Burrus, Lewkowitz & Feinstein, P.C. by Jeffrey S. Leonard and Vista Thompson Brown, Phoenix, for plaintiff/appellee.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Scott E. Boehm and Charles L. Fine, Phoenix, for defendants/appellants.

## OPINION

ROLL, Judge.

Dr. Richard Peairs appeals from the trial court's granting of a preliminary injunction enforcing the terms of a restrictive covenant in an employment contract between Dr. Peairs and Phoenix Orthopaedic Surgery, Ltd. (POS). The restrictive covenant prohibits him from practicing orthopaedic medicine and orthopaedic surgery within a five-mile radius of the offices of POS. For the reasons set forth below, we affirm.

## FACTS

POS is a professional corporation of orthopaedic surgeons. The four shareholders are four physicians who practice out of three offices in northwest Phoenix.

In 1984, POS placed an advertisement in a publication of the American Academy of Orthopaedic Surgeons offering employment for a physician with the specialty of sports medicine. Dr. Peairs answered the advertisement and was furnished with a written agreement in May 1985. This proposed agreement contained a covenant not to compete, which provided as follows:

> 11. *Practice of Medicine by Peairs Upon Termination of this Agreement.* In the event of the termination of this agreement, Peairs agrees he will not practice orthopedic medicine and surgery within a five (5) mile radius of each office of Phoenix from which it is then practicing medicine for a period of three (3) years from (i) the date of termination or (ii) the last day of the current term of this agreement should it not be extended for an additional term. Should Pearis [sic] violate his agreement not to practice within the defined area for the expressed time, he shall pay Phoenix Two Hundred Fifty Dollars ($250.) for each and every day of his violation, not as a penalty, but as agreed liquidated damages to Phoenix for the injury to Phoenix's practice.

Dr. Peairs promptly indicated his concern regarding this provision. However, because he and his wife had already committed themselves to moving to Phoenix from Houston, and because Dr. Peairs believed that the contract was generally advantageous, he signed the contract. Dr. Peairs did have a relative, who was a San Francisco attorney, review the contract. The contract was to commence August 15, 1985, for a one-year term, to be renewable in writing at the option of the parties. Although the contract was not renewed in writing in August 1986, Dr. Peairs continued his employment with POS, albeit with negotiated modifications as to compensation and advancement provisions. On August 27, 1987, Dr. Peairs notified POS in writing that he was resigning, "to be effective in sixty days as required by our contract." POS notified Dr. Peairs of its intent to enforce the covenant not to compete. After Dr. Peairs left POS, he performed approximately 80 percent of his orthopaedic surgery within the restricted area.

## PROCEDURAL HISTORY

On January 11, 1988, POS filed a declaratory judgment action seeking damages and injunctive relief based upon Dr. Peairs' alleged breach of the terms of the restrictive covenant in his employment contract by practicing orthopaedic medicine and orthopaedic surgery within a five-mile radius of POS offices. A preliminary injunction was issued June 16, 1988. The trial court ruled

that the restrictive covenant in the employment contract was enforceable. The court restrained Dr. Peairs from performing emergency room duties as an on-call physician and from performing surgery at Thunderbird Samaritan Hospital, Maryvale Samaritan Hospital, and Glendale Surgicenter. The injunction did not restrain Dr. Peairs from engaging in these activities at John C. Lincoln Hospital (which is beyond the five-mile radius), from conducting classes or seminars, or from serving as the team physician for Deer Valley High School.

Dr. Peairs appeals from the issuance of the preliminary injunction. His motion to suspend the injunction pending this appeal was denied by a different superior court judge. That judge did modify the injunction to allow Dr. Peairs to treat his patients seeking emergency room treatment at hospitals within the five-mile radius of POS offices.

## ISSUES ON APPEAL

Dr. Peairs contends that the trial court erred in issuing the preliminary injunction because (1) the employment agreement had expired, (2) the employment agreement is ambiguous and should be construed against POS, (3) POS suffered no irreparable harm and has an adequate remedy at law, (4) POS is barred from obtaining equitable relief, (5) the restrictive covenant is overbroad and therefore unenforceable, and (6) the restrictive covenant violates the public policy of Arizona.

## STANDARD OF REVIEW

■ Granting a preliminary injunction is within the sound discretion of the trial court. The order will not be reversed unless there is a clear abuse of discretion. *Financial Associates, Inc. v. Hub Properties, Inc.*, 143 Ariz. 543, 545, 694 P.2d 831, 833 (App.1984). A restrictive covenant in an employment agreement is valid and enforceable by injunction when the restraint does not exceed that reasonably necessary to protect the employer's business, is not

unreasonably restrictive of the rights of the employee, does not contravene public policy, and is reasonable as to time and space. *American Credit Bureau, Inc. v. Carter*, 11 Ariz.App. 145, 147, 462 P.2d 838, 840 (1969). However, this court is not bound by the trial court's construction of an employment contract. *Rogers v. Hecla Mining Co.*, 120 Ariz. 612, 613, 587 P.2d 1189, 1190 (App.1978).

### The Employment Contract

#### 1. Expiration Date

■ A restrictive covenant in an employment agreement must "fall within the requirements of a valid contract, and it must be incidental or ancillary to an otherwise legally enforceable contract." *American Credit Bureau*, 11 Ariz.App. at 147, 462 P.2d at 840. Dr. Peairs claims that the employment contract expired under its own terms and is not a legally enforceable contract.

■ The contract was effective August 15, 1985, to August 14, 1986. By its terms it was subject to modification or extension "by written mutual agreement." Dr. Peairs and POS orally negotiated his second year of employment. Dr. Peairs requested and received increased compensation and modified partnership terms so as to allow him full partnership three years following his original employment. On August 27, 1987, Dr. Peairs gave 60 days' written notice of his intent to leave POS "as required by our contract."[1]

■ Parties to a written contract can orally modify the contract by mutual agreement supported by consideration. *Coronado Co., Inc. v. Jacome's Dept. Store, Inc.*, 129 Ariz. 137, 139, 629 P.2d 553, 555 (App. 1981); *Barrett v. Duzan*, 114 Ariz. 137, 139–40, 559 P.2d 693, 695–96 (App.1977). There can be a modification of a written agreement without further writing. *Arizona Feeds v. A & R Argo, Inc.*, 136 Ariz. 420, 423, 666 P.2d 520, 523 (App.1983). "The general rule in most jurisdictions is

---

1. Paragraph 12 of the employment agreement states in part: "This agreement shall terminate ... [a]fter sixty (60) days written notice by either Phoenix [POS] or Peairs to the other."

that parties to a written contract may alter or modify its terms by a subsequent oral agreement even though the contract precludes oral modification." *Park v. Dealers Transit, Inc.*, 596 F.2d 203, 204 (7th Cir. 1979).

Sufficient evidence exists to support the trial court's conclusion that Dr. Peairs and POS orally modified the terms of the employment contract, therefore, the contract was still in effect on August 27, 1987, when Dr. Peairs sent a letter terminating the contract on 60 days' notice.

### 2. *Ambiguity of Restrictive Covenant*

Dr. Peairs argues that the restrictive covenant is not enforceable because it is ambiguous. "An agreement is ambiguous if the language used by the parties can reasonably be construed in more than one sense, and such construction cannot be determined within the four corners of the instrument." *Cecil Lawter Real Estate School, Inc. v. Town & Country Shopping Center Co., Ltd.*, 143 Ariz. 527, 533, 694 P.2d 815, 821 (App.1984). The trial court enumerated activities it considered to be the practice of surgery and medicine. The court did not state whether the agreement was ambiguous. However, the court heard evidence on the meaning of the agreement, and the intent of the parties, then apparently resolved any ambiguities. "[A]ny ambiguity in the documents is subject to a factual determination concerning the intent of the parties and is to be resolved conclusively by the . . . trial court." *United California Bank v. Prudential Ins. Co. of America*, 140 Ariz. 238, 260, 681 P.2d 390, 412 (App.1983).

■ Dr. Peairs argues that the word "practice" as used in the restrictive covenant is ambiguous and that he understood the word to mean only that his office could not be located within a five-mile radius of any POS office. The trial court heard evidence that Dr. Peairs performs procedures which constitute orthopaedic surgery and that virtually all orthopaedic surgery is performed in hospitals or outpatient surgical centers. The trial court found that performing on-call physician duty at the

emergency room of hospitals or serving as assistant surgeon at a hospital within a five-mile radius of POS is the practice of orthopaedic medicine. The court excluded teaching classes and seminars as not constituting the practice of medicine. The court also ruled that Dr. Peairs could serve as a volunteer team physician at Deer Valley High School because of the harm to the high school if Dr. Peairs were to be barred from his duties as volunteer team physician. The injunction was further modified to allow Dr. Peairs to treat his patients seeking emergency care at hospitals within the restricted area. The trial court did not abuse its discretion in so interpreting the restrictions.

### *Injunctive Relief is Appropriate*

Dr. Peairs argues that POS suffered no irreparable harm and has an adequate remedy at law because of a liquidated damages clause in the contract.

■ A preliminary injunction will not be issued when the plaintiff has an adequate remedy at law, *Santa Cruz County v. Burgoon*, 12 Ariz. 295, 100 P. 792 (1906), or when the plaintiff will not suffer irreparable harm. *Justice v. National Collegiate Athletic Ass'n*, 577 F.Supp. 356 (D.Ariz. 1983). The traditional equitable criteria for granting preliminary injunctive relief are: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable harm to the plaintiff if relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) in certain cases, advancement of the public interest. *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1200 (9th Cir.1980). Because Dr. Peairs raises only the issue of irreparable harm, we will not discuss the other factors.

■ The contract contains a liquidated damages clause:

[S]hould Peairs violate his agreement not to practice within the defined area and for the expressed time, he shall pay [POS] Two Hundred Fifty Dollars ($250.) for each and every day of his violation, not as a penalty, but as agreed liquidated

damages to Phoenix for the injury to Phoenix's practice.

The fact that a restrictive covenant provides for liquidated damages does not bar injunctive relief. *Karpinski v. Ingrasci,* 28 N.Y.2d 45, 52, 320 N.Y.S.2d 1, 7, 268 N.E.2d 751 (1971); *McRand, Inc. v. Beclan,* 138 Ill.App.3d 1045, 1052, 93 Ill.Dec. 471, 478, 486 N.E.2d 1306, 1313 (1985). The *Restatement (Second) of Contracts* § 361 (1982) states:

> Specific performance or an injunction may be granted to enforce a duty even though there is a provision for liquidated damages for breach of that duty.

Comment a explains:

> A contract provision for payment of a sum of money as damages may not afford an adequate remedy even though it is valid as one for liquidated damages and not a penalty. Merely by providing for liquidated damages, the parties are not taken to have fixed a price to be paid for the privilege not to perform. The same uncertainty as to the loss caused that argues for the enforceability of the provision may also argue for the inadequacy of the remedy that it provides. Such a provision does not, therefore, preclude the granting of specific performance or an injunction if that relief would otherwise be granted.... If equitable relief is granted, damages for such breach as has already occurred may also be awarded....

"Once a protectable interest is established, irreparable injury is presumed to follow if the interest is not protected." *McRand,* 138 Ill.App.3d at 1052, 486 N.E.2d at 1313.

Because the trial court found that POS had a protectable interest, irreparable injury can be presumed. The liquidated damage provision of the contract does not preclude POS from seeking injunctive relief to prevent Dr. Peairs from competing with POS in violation of the agreement.

### Clean Hands Doctrine

■ Dr. Peairs next argues that POS did not come into court with clean hands, and therefore the trial court should have refused to award POS a remedy. In order for the doctrine of clean hands to bar a claim for equitable relief, any acts of bad faith or unconscionable conduct by POS must relate to the same activity that is the basis of their claim. *Barr v. Petzhold,* 77 Ariz. 399, 407, 273 P.2d 161, 166 (1954). This court has expressly denied injunctive relief to enforce a restrictive covenant in an employment contract because the employer was found to have unclean hands. *American Credit Bureau, Inc. v. Carter, supra.*

Dr. Peairs argues that the restrictive covenant was forced upon him and that POS refused to respond to emergency situations at hospitals within the five-mile radius. These arguments are without merit.

There was evidence that Dr. Peairs had an attorney review the employment contract prior to acceptance. While Dr. Peairs had taken some steps toward moving to Arizona based on the oral negotiations, he received the contract in adequate time to reject POS's offer. He also testified that he accepted the agreement because "the whole offering, taken as a package, was attractive." When Dr. Peairs renewed the agreement for his second year with POS, he negotiated salary and partnership terms. He did not discuss the restrictive covenant.

POS's response to emergency situations is not relevant to the restrictive covenant. If POS's conduct has been equitable toward the defendant, its hands are as clean as the court can require. *American Credit Bureau,* 11 Ariz.App. at 148, 462 P.2d at 841. We find no error on this ground.

### Scope of the Covenant

■ Dr. Peairs argues that the restrictive covenant is unenforceable because it is overbroad in terms of the restricted area. A restrictive covenant in an employment agreement is valid and enforceable by injunction when the restraint does not exceed that reasonably necessary to protect the employer's business, is not unreasonably restrictive of the rights of the employee, does not contravene public policy, and is reasonable as to time and space. *American Credit Bureau, Inc.,* 11 Ariz.App. at

147, 462 P.2d at 840. Enforcement of covenants is limited to the extent reasonably necessary to protect the employer's business interests. *Olliver/Pilcher Ins., Inc. v. Daniels*, 148 Ariz. 530, 532, 715 P.2d 1218, 1220 (1986).

In *Bryceland v. Northey*, 160 Ariz. 213, 217, 772 P.2d 36, 40 (App.1989), Division One of this court stated:

> An employer does have a protectable interest in maintaining customer relationships when an employee leaves. The law will guard this interest by means of a covenant not to compete for as long as may be necessary to replace the employee and give the replacement a chance to show he can do the job.

The validity of a restrictive covenant is determined by its reasonableness. In *Olliver/Pilcher*, the supreme court stated:

> The test of validity of restrictive covenants is one of reasonableness. What is reasonable depends on the whole subject matter of the contract, the kind, character and location of the business ... the purpose to be accomplished by the restriction, and [the totality of] circumstances which show the intention of the parties.

The scope of this covenant is five miles from any of the three POS offices, which are clustered in northwest Phoenix. The trial court heard evidence that at least eight other hospitals and outpatient surgical facilities are located in the metropolitan area outside the restricted radius. No evidence indicated that these facilities were in any way inferior, rather, Dr. Peairs was "just not interested in these facilities." Dr. Peairs chose to locate his office just beyond the restricted area despite the fact that he could have chosen a site near one of the other hospitals.

Dr. Peairs is not restricted from his right to work in his chosen occupation. The trial court did not abuse its discretion by finding the scope of the covenant to be reasonable.

## Public Policy

Dr. Peairs argues that because the restrictive covenant involves medical professionals it contravenes public policy and should not be enforced.

When an employee agrees, by contract, that he will not engage in a competitive business following termination of employment and that agreement is reasonable, it is enforceable unless it contravenes public policy. *Truly Nolen Exterminating, Inc. v. Blackwell*, 125 Ariz. 481, 610 P.2d 483 (App.1980). Dr. Peairs argues that because the restrictive covenant involves the medical profession it should be per se unenforceable. Dr. Peairs cites a 1985 opinion of the Council on Ethical and Judicial Affairs of the American Medical Association (AMA). This opinion discourages any agreement between physicians which restricts the right of a physician to practice medicine in a particular area or for a specific time as not in the public interest.

Dr. Peairs also relies upon *Ladd v. Hikes*, 55 Or.App. 801, 639 P.2d 1307 (App. 1985) and *Dick v. Geist*, 107 Idaho 931, 693 P.2d 1133 (App.1985). These cases are inapposite. In *Ladd*, the court held that a restrictive covenant between a medical partnership and an opthalmologist was not contrary to public policy even though the Oregon Medical Association had adopted a resolution similar to the opinion issued by the AMA. 55 Or.App. at 804, 639 P.2d at 1310. In *Dick*, the court refused to enforce a restrictive covenant preventing two doctors from practicing pediatrics and neonatology, respectively, because to do so created serious impairment to the welfare of the public in the enjoined area. 107 Idaho at 935, 693 P.2d at 1137.

We agree that employment covenants restricting physicians in the practice of medicine involve public policy implications and should therefore be closely scrutized. We reject, however, Dr. Peairs' suggestion that all such covenants not to compete are unenforceable as against public policy. We also decline to rule that Dr. Peairs' covenant is totally unenforceable as against public policy. The evidence at the hearing does not support a finding that the northwest area of Phoenix will be without adequate orthopaedic coverage because Dr. Peairs has been enjoined from practicing in

that area. Dr. Rosen testified that, besides the doctors of POS, there are several orthopaedic surgeons on staff at the hospitals in the restricted area. Dr. Peairs acknowledged that at least one other orthopaedic surgeon in the area is competent in the sports medicine specialty.

■ Dr. Peairs seeks modification of the covenant so as to allow him to (1) practice at those hospitals in the restricted area at which POS practices little or no medicine, (2) respond to requests from those hospitals contacting Dr. Peairs to render treatment after POS has declined, and (3) render treatment to those patients who have insurance with companies with which POS declines to transact.

Generally, restrictive covenants regarding competition of former employees are either reasonable and enforceable or unreasonable and unenforceable. Arizona courts have rejected requests that such agreements be modified. *Olliver/Pilcher*, 148 Ariz. at 532–33, 715 P.2d at 1220–21.

Significantly, the covenant has already been modified in two respects. The trial court permitted Dr. Peairs to continue as team physician to Deer Valley High School and to treat his patients who seek emergency treatment in the emergency room of a hospital within the restricted area.

At first blush, the modification of the covenant in these two respects would appear to be contrary to the principles announced in *Olliver/Pilcher*. There the supreme court followed the "blue pencil" approach to restrictive covenants:

> If it is clear from its terms that a contract was intended to be severable, the court can enforce the lawful part and ignore the unlawful part. Where the severability of the agreement is not evident from the contract itself, the court cannot create a new agreement for the parties to uphold the contract.

148 Ariz. at 533, 715 P.2d at 1221 (citations omitted). *See also Corbin on Contracts* § 1390 (1951).

However, *Olliver/Pilcher* is distinguishable for two reasons. First, the employment contract in the matter before us states, "should any provision of this Agreement be, or become, unenforceable, the remaining provisions shall nevertheless be carried into effect." In *Olliver/Pilcher*, there was nothing in the employment contract to indicate severability. 148 Ariz. at 533, 715 P.2d at 1221. Second, while *Olliver/Pilcher* involved an employment contract of an insurance salesman, the contract before us is between medical professionals whose services are necessary for the welfare of the public. While we decline to declare that the covenant between these professionals is *per se* unenforceable, we affirm the trial court's action in modifying the terms of the covenant.

For the reasons set forth above, we affirm.

## ATTORNEYS' FEES

We decline to award attorneys' fees, each side to bear its own costs.

HOWARD and HATHAWAY, JJ., concur.